CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2017 MAR -7  AM 8: 44

DEPUTY CLERK_____

ORIGINAL

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

UNITED STATES OF AMERICA

v.                                                    NO.

ZTE CORPORATION

# 3 - 17 CR - 0 1 20 K

## PLEA AGREEMENT

ZTE Corporation (ZTEC), the defendant, by and through its attorneys Clifford

Chance, LLP, and Burleson, Pate &Gibson, LLP, and the United States Attorney's Office

for the Northern District of Texas and the United States Department of Justice, National

Security Division (collectively, the "Department") agree as follows:

1.    **Rights of the defendant:**   ZTEC understands that it has the rights:

    a.    to grand jury indictment;

    b.    to plead not guilty;

    c.    to have a trial by jury;

    d.    to have its guilt proven beyond a reasonable doubt; and

    e.    to confront and cross-examine witnesses and to call witnesses in its

defense.

2.    **Waiver of rights and plea of guilty**:   ZTEC waives these rights and

pleads guilty to the offenses alleged in the Information: Count 1, Conspiracy to

Unlawfully Export, in violation of 50 U.S.C. § 1705(c), 31 CFR Part 560, 15 C.F.R.

§ 764.2(a)-(e); Count 2, Obstruction of Justice, in violation of 18 U.S.C. § 1503(a); and

Count 3, False Statements to Federal Investigators, in violation of 18 U.S.C. § 1001(a).

ZTEC understands the nature and elements of the crimes to which it is pleading guilty,

and agrees that the Factual Resume it has signed, incorporated herein, is true and will be

submitted as evidence.

3.    **Sentence:**    The minimum and maximum penalties the Court can impose

include:

Count One

a.    A maximum fine, pursuant to 18 U.S.C. § 3571, of the greatest of

$1,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross

pecuniary loss to persons other than the defendant resulting from the offense.

b.    A mandatory special assessment of $400;

Count Two

a.    A maximum fine, pursuant to 18 U.S.C. § 3571, of the greatest of

$500,000, twice the gross pecuniary gain derived from the offense, or twice the gross

pecuniary loss to persons other than the defendant resulting from the offense.

b.    A mandatory special assessment of $400;

Count Three

a.    A maximum fine, pursuant to 18 U.S.C. § 3571, of the greatest of

$500,000, twice the gross pecuniary gain derived from the offense, or twice the gross

pecuniary loss to persons other than the defendant resulting from the offense.

b.    A mandatory special assessment of $400;

4.     **Sentencing guidelines:**   The parties agree that, consistent with the

principles set forth in § 3D1.2 of the Sentencing Guidelines, the counts will be grouped

together and, in accordance with § 3D1.3 of the Sentencing Guidelines, the highest

offense level will be the applicable offense level.   Among the three counts, Conspiracy

to Unlawfully Export produces the greatest fine amount.   Although Conspiracy to

Unlawfully Export is covered by U.S.S.G. § 2M5.1, Evasion of Export Controls;

Financial Transactions with Countries Supporting International Terrorism, that Guideline

is not listed under U.S.S.G. § 8C2.1, which governs criminal fines for organizations.

Therefore, the parties agree that ZTEC's sentence is not governed by the Fine Guidelines

(§§ 8C2.2 – 8C2.9) of the Sentencing Guidelines.   Instead, pursuant to U.S.S.G.

§ 8C2.10, the sentence is determined by applying 18 U.S.C. §§ 3553 and 3572.

5.     **Sentencing agreement:**   Pursuant to Rule 11(c)(1)(C) of the Federal

Rules of Criminal Procedure, ZTEC and the Department agree that a $286,992,532

criminal fine and a period of three years of corporate probation (more fully described in

paragraph 7) is an appropriate sentence and should be imposed by the Court in

connection with ZTEC's guilty plea to the Information, taking into account the

inapplicability of the Sentencing Guidelines, the nature and circumstances of the offense,

the need for the sentence imposed to reflect the seriousness of the offense, and the need

for the sentence to promote respect for the law, to provide just punishment for the

offense, and to afford adequate deterrence to other criminal conduct, as well as for the

sentence imposed to protect the public from further crimes.   18 U.S.C. § 3553(a)(1).

ZTEC and the Department agree that this is a reasonable and appropriate sentence, which

is sufficient, but not greater than necessary, to achieve the purposes of sentencing in light

of the factors set forth under 18 U.S.C. §§ 3553(a) and 3572.   ZTEC agrees that no

portion of the criminal fine is deductible on any Federal, State, or foreign income tax or

information return.

a.      ZTEC further agrees to the entry of a forfeiture money judgment of

$143,496,266[1] against it (the "Forfeiture Amount"), as discussed below in Paragraph 13.

The criminal fine and Forfeiture Amount shall be paid to the United States no later than

ninety (90) days after the date of sentencing.

b.      ZTEC also agrees that it shall pay a $1,200.00 special assessment.

c.      ZTEC agrees that if at any time while it has obligations under this

Plea Agreement the defendant sells, merges, or transfers all or substantially all of its

business operations as they exist as of the date of this Plea Agreement, whether such sale

is structured as a stock or asset sale, merger, or transfer, ZTEC shall include in any

contract for sale, merger, or transfer a provision fully binding the purchaser(s) or any

successor(s) in interest thereto to the guarantees and obligations described in this Plea

Agreement.

d.      Pursuant to Rule 32(c)(1)(A)(ii) of the Federal Rules of Criminal

Procedure (F.R.C.P.), ZTEC agrees to waive a pre-sentence investigation and report and

---

1 ZTEC has also agreed to pay the Department of Commerce $361,000,000 and the Department of the Treasury's
Office of Foreign Assets Control $100,871,266 pursuant to settlement agreements with those agencies.   The
Department of Commerce has also suspended an additional $300,000,000 fine that will be imposed if ZTEC violates
its agreement with the Department of Commerce.   The total overall forfeiture and fine amount that ZTEC will be
paying the U.S. Government, therefore, is $892,360,064, with an additional $300,000,000 suspended.

**Plea Agreement - Page 4**

consents to the Court conducting a sentencing hearing and imposing the sentence on the same date as the entry of the guilty plea.

6.      **Rejection of agreement:**   Pursuant to Rule 11(c)(5), F.R.C.P., if the Court rejects this Plea Agreement, the Court shall afford ZTEC the opportunity to withdraw its plea, and shall advise ZTEC that, if it persists in its guilty pleas, the Court is not bound by this Plea Agreement and the disposition of the case may be less favorable than that contemplated by this Plea Agreement.

7.      **Defendant's Agreement:**   ZTEC agrees to the following provisions:

a.      ZTEC agrees that it and its subsidiaries, divisions, segments, and affiliates will not commit any felony violation of United States Federal law during the three-year term of corporate probation.

b.      ZTEC agrees that it has implemented and will continue to implement and maintain throughout the term of probation a compliance and ethics program designed to prevent and detect violations of sanctions and export controls pursuant to the International Emergency Economic Powers Act ("IEEPA"), the Iranian Transactions and Sanctions Regulations ("ITSR"), the Export Administration Regulations ("EAR"), and other applicable U.S. export control laws (collectively "U.S. Export Control Laws") throughout ZTEC's operations, including those of its subsidiaries, divisions, segments, and affiliates.   Implementation of these policies and procedures shall not be construed in any future criminal proceeding initiated by the Government as providing immunity or amnesty to ZTEC for any crimes not disclosed to the Government as of the date of the signing of this Plea Agreement for which ZTEC otherwise would be responsible.

c.     During the period of probation, ZTEC shall continue to cooperate fully with the Department, the Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and the Department of Commerce in any and all matters concerning any act within the scope of or related to the conduct described in the Factual Resume or related to other potential violations of U.S. Export Control Laws occurring during the period of probation, subject to applicable law and regulations. At the request of the Department, ZTEC shall also cooperate fully with other U.S. or foreign law enforcement authorities and agencies in any investigation of ZTEC, its affiliates, or any of its present and former officers, directors, employees, agents, and consultants, or any other party in any and all matters concerning any act within the scope of or related to the conduct described in the Factual Resume or relating to potential violations of U.S. Export Control Laws that occur during the probation period.   ZTEC agrees that its cooperation shall include, but is not limited to, the following:

i.     ZTEC shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege, work product doctrine protection, or People's Republic of China ("PRC") state secrets privilege with respect to its activities, those of its affiliates, and those of its present and former directors, officers, employees, agents, and consultants concerning all matters relating to the conduct described in the Factual Resume or relating to other potential violations of U.S. Export Control Laws about which ZTEC has any knowledge or about which the Department may inquire. This obligation of truthful disclosure includes the obligation of ZTEC to provide

to the Department, upon request, any non-privileged or non-protected document, record or other tangible evidence.

ii.     ZTEC shall use its best efforts to make available for interview, deposition pursuant to Rule 15 of the Fed. R. Crim. P., or other sworn testimony, as required by the Department or other U.S. or foreign law enforcement authorities and agencies, present or former officers, directors, employees, agents, and consultants concerning the conduct described in the Factual Resume or related to any potential violations of U.S. Export Control Laws occurring during the probation period;

iii.    ZTEC shall notify the Department of credible evidence of any violations of U.S. Export Control Laws occurring during the probation period committed by ZTEC or any of its subsidiaries or affiliates worldwide.   ZTEC further agrees that it will provide the requisite notification to the Department of potential violations of U.S. Export Control Laws promptly upon learning of the underlying credible evidence.

iv.     ZTEC waives all defenses based on issues germane to statute of limitations, venue (for purposes of the Plea Agreement only, ZTEC concedes jurisdiction in the Northern District of Texas), speedy trial under the United States Constitution and Speedy Trial Act, and any and all constitutional and non-jurisdictional defenses with respect to any prosecution of ZTEC for violations of U.S. Export Control Law that is not time-barred on the date this Plea Agreement is signed.

d.     ZTEC further agrees to cooperate fully with the Department regarding any criminal investigation by U.S. law enforcement authorities ("criminal

investigation"), including investigations of third parties, during the three-year period of probation in a manner set forth below:

      i.     ZTEC shall truthfully disclose to the Government all factual information not protected by a valid claim of attorney-client privilege, work-product doctrine protection, or PRC state secrets privilege concerning any act within the scope of or related to the criminal investigation.

      ii.     ZTEC shall provide to the Government, upon request, any document, record, or other materials not protected by a valid claim of attorney-client privilege, work-product doctrine protection, or PRC state secrets privilege concerning any act within the scope of or related to the criminal investigation.

      iii.     ZTEC shall use its best efforts to make available for interviews or testimony, as requested by the Government, present or former officers, directors, employees, agents, and consultants, in any and all matters concerning any act within the scope of or related to the criminal investigation.   This obligation includes, but is not limited to, sworn testimony before federal grand juries or federal trials, as well as interviews with U.S. law enforcement.   Cooperation under this paragraph shall include, at the request of the Department, identification of witnesses who, to ZTEC's knowledge, may have material information concerning any act within the scope of or related to the criminal investigation.

      e.     ZTEC agrees to retain an independent, third-party compliance monitor (the "Monitor") to review and assess in a professionally independent and objective fashion ZTEC's processes, policies, and procedures related to compliance with

U.S. Export Control Laws, as well as ZTEC's compliance with the terms of this Plea Agreement.   The Monitor's duties, powers, and responsibilities are set forth in Attachment A, which is incorporated herein.   ZTEC agrees that it will retain the Monitor for the entire three-year-term of corporate probation.   ZTEC agrees that it will engage the Monitor within ninety (90) calendar days, as described in Attachment A, from the date of the acceptance of this Plea Agreement by the Court.

    f.  ZTEC agrees that annually during the term of probation, including between thirty (30) and sixty (60) days before the expiration of the term of probation, the General Counsel of ZTEC shall execute, under the penalty of perjury, and provide to the Government, a certification that to the best of the General Counsel's knowledge, after reasonable inquiry, ZTEC is in compliance with the terms of this Plea Agreement.   This certification shall also include the General Counsel's attestation that ZTEC has continued to maintain its compliance and ethics program designed to prevent and detect violations of U.S. Export Control Laws throughout its operations, including those of its subsidiaries, divisions, segments, and affiliates.

    g.  The General Counsel's certifications, the Monitor's Reports as detailed in Attachment A, and ZTEC's disclosures of information related to violations will likely include proprietary, financial, confidential, and competitive business information.   Moreover, public disclosure of these materials could discourage cooperation and thus undermine the objectives of this Plea Agreement's reporting requirements.   Accordingly, these materials are intended to remain and shall remain non-public, except as otherwise agreed to by the Government and ZTEC in writing, or except

to the extent the Government determines in its sole discretion that disclosure would be in furtherance of the Government's discharge of its duties and responsibilities or is otherwise required by law, and in such circumstances gives notice to ZTEC.

h.      ZTEC agrees that the four employees identified as having signed the document described in paragraphs 40-41 of the Factual Resume have resigned or will resign or will be terminated, along with any and all payment obligations owed to them. ZTEC further agrees that it will accomplish this within six months of signing this Plea Agreement and that it shall provide the Department corroborating documentation of these actions.

i.      ZTEC agrees that if it or any of its direct or indirect affiliates or subsidiaries issue a press release in connection with this Plea Agreement, ZTEC shall first consult the Department and the Department of Commerce to determine whether (a) the text of the release is true and accurate with respect to matters between the Department and the defendant; and (b) the Department and Department of Commerce have no objection to the release. Statements made by ZTEC at any press conference or other public speaking event shall be consistent with the approved press release.

j.      ZTEC agrees that these undertakings shall be binding upon any acquirer or successor in interest to ZTEC or substantially all of ZTEC's assets and liabilities or business.

k.      ZTEC waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without

limitation any records that may be sought under the Freedom of Information Act, 5

U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552(a).

8.     **Government's agreement**:    The government will not bring any additional

charges against ZTEC or any of its present or former subsidiaries or affiliates, for

conduct that (i) arises from or relates in any way to the conduct of the defendant or its

present and former employees, consultants and agents alleged in the accompanying

Information and Factual Resume, or (ii) that arises from or relates in any way to

information disclosed by the defendant to the Department prior to the date of this Plea

Agreement or otherwise known to the Department prior to the date of this Agreement.

This Agreement is limited to the United States Attorney's Office for the Northern District

of Texas and the U.S. Department of Justice, National Security Division, and does not

bind any other federal, state, or local prosecuting authorities, nor does it prohibit any civil

or administrative proceeding against ZTEC or any property.    This paragraph does not

provide any protection against prosecution for any violations of U.S. criminal law if

made in the future by ZTEC, or any of its then officers, directors, employees, agents or

consultants, whether or not disclosed by the defendant pursuant to the terms of this

Agreement. This Plea Agreement will not close or preclude the investigation or

prosecution of any natural persons, including any current or former officers, directors,

employees, stockholders, consultants or agents of ZTEC, who may have been involved in

any of the matters set forth in the accompanying Factual Resume or in any other matters.

9.     **Violation of agreement:**    ZTEC understands that if it violates any

provision of this Agreement, or if any guilty plea is vacated or withdrawn, the

government will be free from any obligations of this Agreement and free to prosecute ZTEC for all offenses of which it has knowledge.    In such event, ZTEC waives any objections based upon delay in prosecution.    If any plea is vacated or withdrawn for any reason other than a finding that it was involuntary, ZTEC also waives objection to the use against it of any information or statements it has provided to the Department, and any resulting leads.

10.    **Voluntary plea:**    These pleas of guilty are freely and voluntarily made and are not the result of force or threats, or of promises apart from those set forth in this Plea Agreement.    There have been no guarantees or promises from anyone as to what sentences the Court will impose. Upon entry of ZTEC's plea, the Department of Justice will not oppose ZTEC's removal from the Entity List and the Department of Justice will use its best efforts to move for an expeditious entry of this Plea Agreement.

11.    **Waiver of right to appeal or otherwise challenge sentence**:    ZTEC waives its rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal from its convictions and sentences.    ZTEC further waives its right to contest its convictions and sentences in any collateral proceeding, including proceedings under 28 U.S.C. § 2255. ZTEC, however, reserves the rights (a) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing; (b) to challenge the voluntariness of its pleas of guilty or this waiver; and (c) to bring a claim of ineffective assistance of counsel.

12.    **Representation of counsel**:    ZTEC has thoroughly reviewed all legal and factual aspects of this case with its lawyer and is fully satisfied with that lawyer's legal

representation.   ZTEC has received from its lawyer explanations satisfactory to it concerning each paragraph of this Plea Agreement, each of its rights affected by this Agreement, and the alternatives available to it other than entering into this agreement. Because ZTEC concedes that it is guilty, and after conferring with its lawyer, ZTEC has concluded that it is in its best interest to enter into this Plea Agreement and all its terms, rather than to proceed to trial in this case.

      13.    **Forfeiture**

        a.    ZTEC agrees to the Forfeiture Allegation in the Criminal Information to which it is pleading guilty.

        b.    Specifically, ZTEC agrees to pay the United States a forfeiture money judgment in the amount of $143,496,266.   ZTEC agrees that the Factual Resume supporting its guilty plea is sufficient evidence to support this forfeiture.   ZTEC agrees that the Court may enter a preliminary Consent Order of Forfeiture for this property at the time of ZTEC's guilty plea or at any time before sentencing.   ZTEC agrees that this Order will become final as to ZTEC when it is issued and will be part of the sentence pursuant to Rule 32.2(b)(4)(A), F.R.C.P.

        c.    ZTEC agrees that, if ZTEC does not pay the United States a forfeiture money judgment in the amount of $143,496,266 within ninety (90) days after the date of sentencing, this Plea Agreement permits the Government to seek to forfeit any of ZTEC's assets, or any assets of its U.S. subsidiary, ZTE USA, Inc., real or personal, that are subject to forfeiture under any federal statute, whether or not this Agreement specifically identifies the asset.   Regarding any asset or property, ZTEC agrees to

forfeiture of all interest in: (1) any and all property, real or personal, which constitutes or is derived from proceeds traceable to the violation to which it is pleading guilty; and (2) any substitute assets for property otherwise subject to forfeiture. *See* 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461; 21 U.S.C. § 853(p).

  d.  ZTEC agrees that, if ZTEC does not pay the United States a forfeiture money judgment in the amount of $143,496,266 within ninety (90) days after the date of sentencing, the Government may choose in its sole discretion how it wishes to accomplish forfeiture of the property whose forfeiture ZTEC has consented to in this Plea Agreement, whether by criminal or civil forfeiture, using judicial or non-judicial forfeiture processes. If the Government chooses to effect the forfeiture provisions of this Plea Agreement through the criminal forfeiture process, ZTEC agrees to the entry of orders of forfeiture for such property and waives the requirements of Rule 32.2, F.R.C.P., regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. ZTEC understands that the forfeiture of assets is part of the sentence that may be imposed in this case.

  e.  ZTEC agrees to waive all constitutional and statutory challenges in any manner (including, but not limited to, direct appeal) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

14.   **Entirety of agreement**:   This document is a complete statement of the parties' agreement and may not be modified unless the modification is in writing and signed by all parties.

AGREED TO AND SIGNED this **6ᵀᴴ** day of **MARCH**, 2017.

JOHN R. PARKER
UNITED STATES ATTORNEY

Defendant,
By: 赵先明/Zhao Xianming
Its: Chairman and President
of ZTE Corporation

J. MARK PENLEY
Assistant U.S. Attorney

GARY C. TROMBLAY
Deputy Criminal Chief

WENDY WYSONG
Attorney for Defendant

LISA J. DUNN
Criminal Chief

ELIZABETH L. D. CANNON
Trial Attorney, National Security
Division

Plea Agreement - Page 15

## **CERTIFICATE**

I have read or had read to me this Plea Agreement and have carefully reviewed every part of it with my attorney.    I fully understand it and voluntarily agree to it.

_____          ___3/2/2017___
Defendant                                                                Date


I am the defendant's counsel.  I have carefully reviewed every part of this Plea Agreement with the defendant.    To my knowledge and belief, my client=s decision to enter into this Plea Agreement is an informed and voluntary one.

_____          ___3/6/17___
Wendy L. Wysong                                               Date
Attorney for Defendant


Plea Agreement - Page 16

## ATTACHMENT A
## INDEPENDENT CORPORATE COMPLIANCE MONITOR

1.      Within ninety (90) calendar days from the date of acceptance of this Plea Agreement by the Court, ZTE Corporation ("ZTEC" or the "Company") agrees to engage an independent corporate monitor (the "Monitor") for a period not to exceed three (3) years from the date of acceptance of this Plea Agreement by the Court.   The Monitor's primary responsibility is to assess and monitor the Company's compliance with the terms of this agreement so as to specifically address and reduce the risk of any recurrence of the Company's misconduct, including evaluating the Company's corporate compliance program with respect to the International Emergency Economic Powers Act ("IEEPA"), the Iran Transactions and Sanctions Regulations ("ITSR"), the Export Administration Regulations ("EAR"), and other relevant export control laws, and making recommendations for improvement. Within forty-five (45) calendar days after the signing of this agreement, and after consultation with the Department, the Company will propose to the Department three candidates to serve as the Monitor.   The Monitor candidates shall have (a) at a minimum, the qualifications and experience sufficient in the opinion of the Department to properly discharge the Monitor's duties; (b) the ability to access and deploy appropriate internal ZTEC resources as necessary to discharge the Monitor's duties as described herein; and (c) sufficient independence from the Company to ensure effective and impartial performance of the Monitor's duties as described in the agreement.

2.      The Department retains the right, in its sole discretion, to accept or reject the Monitor candidates proposed by the Company.   The Monitor's term shall be three (3) years from the date of acceptance of this Plea Agreement by the Court. The Monitor's

duties and authority, and the obligations of the Company with respect to the Monitor and the Department, are set forth below.

3.    The Company agrees that it will not employ or be affiliated with the Monitor for a period of not less than two years from the date the Monitor's work has ended.[1]

4.    The Monitor will review and evaluate the effectiveness of the Company's internal controls, record-keeping, and existing or new procedures as they relate to the Company's compliance with the IEEPA, ITSR, EAR, and other applicable export control laws (the "Export Control Policies and Procedures").   This review and evaluation shall include an assessment of the Export Control Policies and Procedures as actually implemented.   The retention agreement between the Company and the Monitor will reference this Plea Agreement and include it as an attachment so the Monitor is fully apprised of his or her duties and responsibilities.

5.    The Company shall cooperate fully with the Monitor and the Monitor shall have the authority to take such reasonable steps as, in his or her view, may be necessary to be fully informed about the compliance program of the Company within the scope of his or her responsibilities under this Agreement.   To that end, the Company shall provide the Monitor with access to all information, documents, records, facilities and/or

---

1 The Department recognizes that the Company has signed a Settlement Agreement with the Department of Commerce related to the conduct that is the subject of this Plea Agreement.   Pursuant to that Settlement Agreement, the Company has to provide annual audits to the Department of Commerce for a period of six years.   For the first three years, the Monitor will be responsible for providing those audits.   If the Department of Commerce and the Company agree, the Monitor may continue to serve as the auditor pursuant to the Company's Settlement Agreement with the Department of Commerce.   Upon completion of those audits, the two-year period described in Paragraph 3 of this Attachment will commence.

**Attachment A - Page 2**

employees that fall within the scope of responsibilities of the Monitor under this Agreement, subject to the following limitations:

a.     In the event that the Company seeks to withhold from the Monitor access to information, documents, records, facilities, and/or employees of ZTEC that may be subject to a valid claim of attorney-client privilege, attorney-work-product doctrine, or applicable state secrets, the Company shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor.

b.     If the matter cannot be resolved, at the request of the Monitor, the Company shall promptly provide written notice to the Monitor and to the Department. Such notice shall include a non-privileged description of the nature of the information, documents, records, facilities and/or employees that are being withheld, as well as the basis for the claim.   The Department may then consider whether to make a further request for access to such information, documents, records, facilities and/or employees.

6.     The parties agree that the Monitor is an independent third-party, not an employee or agent of the Company or the Department, and that no attorney-client relationship shall be formed between the Company and the Monitor.

7.     Any disclosure by the Company to the Monitor concerning export control violations, as previously defined in this Plea Agreement, shall not relieve the Company of its obligation truthfully to disclose such matters to the Department.

8.     During the three (3)-year term, the Monitor shall conduct an initial review and prepare an initial report, followed by two follow-up reviews and reports as described below:

a.      With respect to each of the three (3) reviews, after initial consultations with the Company and the Department, the Monitor shall prepare a written work plan for each review, which shall be submitted in advance to the Company and the Department for comment.   In order to conduct an effective initial review of the Company's Export Control Policies and Procedures, the Monitor's initial work plan shall include such steps as are reasonably necessary to develop an understanding of the facts and circumstances surrounding any violations that may have occurred, but the parties do not intend that the Monitor will conduct his or her own investigation into those historical events.   Any disputes between the Company and the Monitor with respect to the work plan shall be decided by the Department.

b.      In connection with the initial review, the Monitor shall issue a written report within one hundred twenty (120) calendar days of the approval of the Monitor by the Department setting forth the Monitor's assessment and, if appropriate and necessary, making recommendations reasonably designed to improve the Company's Export Control Policies and Procedures.   The Monitor shall provide the report to the Board of Directors of the Company and contemporaneously transmit copies to the Counterintelligence and Export Control Section, National Security Division, U.S. Department of Justice; U.S. Attorney's Office for the Northern District of Texas; Office of Export Enforcement, U.S. Department of Commerce, and Office of Foreign Assets Control, Treasury Department of the Treasury.

c.      Within one hundred twenty (120) calendar days after receiving the Monitor's report, the Company shall consider, in good faith, adopting the

recommendations set forth in the report. Within sixty (60) calendar days after receiving the report, the Company shall advise the Monitor and the Department in writing of any recommendations that the Company considers unduly burdensome, impractical, costly or otherwise inadvisable.   As to any recommendation on which the Company and the Monitor ultimately do not agree, the views of the Company and the Monitor shall promptly be brought to the attention of the Department.   The Department may consider the Monitor's recommendation and the Company's reasons for not adopting the recommendation in determining whether to bring relevant facts to the attention of other parts of the U.S. government.

   d. The Monitor shall undertake two follow-up reviews to further monitor and assess whether the Company's Export Control Policies and Procedures are reasonably designed to detect and prevent violations of the IEEPA, ITSR, EAR, and other applicable export control laws.

   e. Within sixty (60) calendar days of initiating each follow-up review, the Monitor shall:

     i) Complete the review;

     ii) Certify whether the Company's Export Control Policies and Procedures are appropriately designed and implemented to ensure compliance with the IEEPA, ITSR, EAR, and other applicable export control laws; and

     iii) Report on the Monitor's findings in the same fashion as with respect to the initial review.

f.     The first follow-up review and report shall be completed by one year after the initial review.   The second follow-up review and report shall be completed by one year after the completion of the first follow-up review.

g.     The Monitor may extend the time period for submission of the follow-up reports with prior written approval of the Department.

9.     In undertaking the assessments and reviews described above, the Monitor shall formulate conclusions based on:

a.     inspection of relevant documents, including the policies and procedures relating to the Company's Export Control Policies and Procedures;

b.     on-site observation and testing of the Company's systems and procedures, including its internal controls, record-keeping, and internal audit procedures;

c.     meetings with, and interviews of, relevant employees, directors and other persons at mutually convenient times and places; and

d.     analyses, studies and testing of the Company's Export Control Policies and Procedures, including its export control computer systems and networks.

10.     Should the Monitor, during the course of his or her engagement, discover credible evidence that potentially unlawful transactions were not reported pursuant to applicable export control laws, the Monitor shall promptly report such conduct to the Company's General Counsel for further investigation, unless the Monitor believes, in the exercise of his or her discretion, that such disclosure should be made directly to the Department.   If the Monitor refers the matter only to the Company's General Counsel, the General Counsel shall promptly report the same to the Department and

contemporaneously notify the Monitor that such report has been made.   If the Company fails to make disclosure to the Department within fourteen (14) business days of the Monitor's report of such conduct to the Company, the Monitor shall independently disclose his or her findings to the Department.

11.     Further, in the event that the Company, or any entity or person working directly or indirectly for the Company, refuses to provide information necessary for the performance of the Monitor's responsibilities, the Monitor shall promptly disclose that fact to the Department.   The Company shall not take any action to retaliate against the Monitor for any such disclosures or for any other reason.

12.     At least annually, and more frequently if appropriate, representatives of the Company and the Department will meet together to discuss the monitorship and any suggestions, comments or proposals for improvement the Company may wish to discuss with the Department.