IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 3:17-CR-0120-K |
| | § | |
| ZTE CORPORATION | § | |
| | § | |
| Defendant. | § | |

ORDER

The question before the Court is whether Defendant ZTE Corporation's felony probation should be revoked for violating the terms of its probation by committing another felony: conspiracy to commit visa fraud in connection with a scheme to evade U.S. laws by bringing scientists to work at its New Jersey laboratory when their visas only authorized students and scholars to conduct research at Georgia Tech. The Court finds as follows.

I. Factual Background

ZTE Corporation ("ZTEC" or, collectively with its subsidiaries and affiliates, "ZTE") is the fourth largest telecommunications company in the world. It has hundreds of subsidiaries, including ZTE (TX), Inc., and ZTE (USA), Inc. in the United States.

Beginning at least as early as January 2010, ZTEC violated U.S. law by willfully causing the export of goods from the United States to Iran in violation of U.S. sanctions, obstructing justice, and making false statements to federal investigators. ZTEC's most senior managers constructed an elaborate scheme to evade detection by

1

U.S. authorities. This scheme included, among other things, establishing entities as front companies to enable ZTEC to surreptitiously supply U.S.-component parts necessary for its projects in locations embargoed by the United States. In executing this scheme, ZTEC along with its co-conspirators, purchased U.S.-origin electronics and network equipment and then illegally transshipped, exported, or re-exported those electronics to Iran.

In March 2017, ZTEC pleaded guilty in this Court, which was randomly assigned, to three felonies:

    1) conspiring to unlawfully export U.S.-origin items to Iran,

    2) corruptly obstructing the administration of justice, and

    3) making false statements to federal agents.

The Company also made sales that were alleged, but for which it was not charged, to customers in other sanctioned and embargoed countries and areas including North Korea, Cuba, Syria, Sudan, and Crimea, among other acts. The government and the Company entered into a plea agreement, under Rule 11(c)(1)(C).

When pleading guilty in 2017, as part of its plea agreement, ZTEC agreed that "it and its subsidiaries, divisions, segments, and affiliates will not commit any felony violation of [U.S.] federal law during" its corporate probation as well as that it "has implemented . . . a compliance [program] . . . throughout ZTEC's operations, including those of its subsidiaries, divisions, segments, and affiliates." ZTEC also agreed to retain an independent corporate monitor who would be charged with reviewing, assessing,

and reporting on the Company's compliance with the terms of the plea agreement. Additionally, as part of a parallel settlement with the Department of Commerce, this Court's independent corporate monitor was also named the independent compliance auditor, responsible for completing three annual audit reports that complied with the Export Management and Compliance Program audit module prescribed by Commerce's Bureau of Industry and Security.

After being adjudged guilty, the Court accepted the 11(c)(1)(C) plea agreement. The Court then placed ZTEC on probation for a period of three years, assessed a fine of $286,992,532.00; a forfeiture of $143,496,266.00; a special assessment of $1,200.00; an additional fine to the Department of Commerce of $361,000,000.00; an additional fine to the Department of Treasury's Office of Foreign Assets Control of $100,871,266.00; and suspended a fine to the Department of Commerce of $300,000,000.00 to be imposed if ZTEC violated its agreement with the Department of Commerce. The total of all forfeiture and fine amounts ZTEC paid the U.S. Government at that time was $892,360,064.00. This was the highest monetary settlement for an export case to date.

Despite its obligation to consistently do so, ZTEC has inconsistently cooperated with the Monitor. A significant failure to cooperate occurred in late 2017 less than a year after the original guilty plea when ZTEC falsely informed the Government, and then later the Monitor, that it would or had disciplined numerous employees responsible for the violations that led to the March 2017 settlement agreement when

3

ZTEC instead rewarded their illegal activity with bonuses. ZTEC again admitted lying to both the Government and the Monitor. As a result, on October 3, 2018, the Court accepted an agreement between ZTEC and the government and modified ZTEC's three-year corporate probation to include an additional two years of supervision and imposed the additional $300 million fine that had been suspended. The Court found that ZTEC violated the terms of its probation, specifically by making false statements regarding its compliance to the Monitor and the Government.

After ZTEC's first probation violation, cooperation improved, and the Monitor was able to review and audit ZTEC's compliance across the worldwide network of businesses owned and controlled by ZTEC. For a period, it appeared that ZTEC was making genuine progress.

Then on March 18, 2021, a grand jury in the Northern District of Georgia indicted Jianjun Yu, who was the Director of ZTE TX's optics laboratory in Morristown, New Jersey. Among other charges, Dr. Yu was indicted for conspiracy to commit visa fraud between 2014 and 2018. The scheme included allegations of materially false statements to obtain J-1 Visas sponsored by the Georgia Institute of Technology ("Georgia Tech") for Chinese Nationals, in violation of 18 U.S.C. §§ 371 and 1546(a). Despite ZTE's connection to and involvement in these charges, it failed to inform the Court.

Around the time of the indictment, ZTE's cooperation with the Monitor diminished, and the Monitor identified three additional concerns for revocation of

ZTE's felony probation: (1) ZTEC's failure to implement compliance programs at all of its subsidiaries and affiliates; (2) ZTEC's failure to correct inappropriate exports of controlled items; and (3) ZTEC's untested or flawed compliance-regulating computer systems.

On February 24, 2022, during a hearing to resolve outstanding motions and to address the four areas of concern, the Department of Justice stated that there was probable cause the Defendant violated the terms of its probation, specifically for the charges pending in the Northern District of Georgia. For the other potential revocation items identified by the Monitor, the Government stated that it was not in a position to assess and establish those violations, that they were "very appropriate for the Special Compliance Coordinator" to review (meaning the compliance monitor appointed by the Department of Commerce), and the DOJ was not in a position to bring to the Court evidence that establishes such violations of these items at this time because this is a complicated area of law. As a result, the Court notified the parties of potential revocation on the Georgia charges and convened a hearing pursuant to Rule 32.1.

On March 14, 2022, the Court held an evidentiary hearing at which it received evidence, testimony, and argument offered by the Government and ZTEC.

## II. Legal Standard

"If the defendant violates a condition of probation at any time prior to the expiration of termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering

the factors set forth in section 3553(a) to the extent they are applicable . . . revoke the sentence of probation and resentence the defendant under subchapter A." 18 U.S.C. § 3565(a); *see also* U.S.S.G. § 8F1.1 ("Upon finding of a violation of a condition of probation, the court may extend the term of probation, impose more restrictive conditions of probation, or revoke probation and resentence the organization."). In felony cases, terms of probation of up to five years are permitted. 18 U.S.C. § 3561(c). Here, Defendant's current term of probation is five years, and it paid the maximum statutory financial penalty.

A court may revoke a probation if it is "reasonably satisfied," by a preponderance of the evidence, that defendant's conduct "has not been as good as required by the conditions of probation." *United States v. Levine*, 983 F.2d 785, 787 (7th Cir. 1993) (internal quotations omitted)(quoting *United States v. Thomas*, 934 F.2d 840, 846 (7th Cir. 1991)); *see also United States v. Jang*, 574 F.3d 263, 265-66 (5th Cir. 2009); *United States v. Teran*, 98 F.3d 831, 836 (5th Cir. 1996). Proof beyond a reasonable doubt is not required. *Levine*, 983 F.2d at 787.

"[A] single probation violation [i]s sufficient to support the district court's exercise of discretion to revoke [a defendant's] probation." *United States v. Lindo*, 52 F.3d 106, 107-08 (6th Cir. 1995). The Sentencing Guidelines suggest as a matter of policy that if imprisonment cannot be part of the sentence, revocation of probation "is the appropriate disposition" when a defendant commits additional violations. U.S.S.G. § 7B1.3 cmt. n.1.

### III. The Revocation Hearing

After providing notice to and a summons for ZTEC, consistent with the applicable rules, the Court held the revocation hearing. The allegation at issue is whether ZTEC committed the felony of conspiracy to commit visa fraud in connection with a scheme to evade U.S. laws by bringing in scientists to work at its New Jersey laboratory when they were required to work at Georgia Tech as outlined in the Northern District of Georgia Indictment. ZTEC acknowledged that it had notice of the visa fraud allegations, having known of the Indictment since March 2021, and it pleaded "not true" at the hearing to ZTEC violating probation. This case has largely been sealed but, by agreement of all parties, this hearing was unsealed and open to the public.

On March 18, 2021, a grand jury in the Northern District of Georgia indicted Jianjun Yu, who was the Director of ZTE TX's laboratory in Morristown, New Jersey. Among other charges, Dr. Yu was indicted for conspiracy to commit visa fraud from on or about April 14, 2014, through at least on or about October 17, 2018.

The scheme included allegations of materially false statements to obtain J-1 Visas for Chinese Nationals in violation of 18 U.S.C. §§ 371 and 1546(a). J-1 Visas are for foreign individuals who intend to participate in an approved program (like the one at Georgia Tech) for teaching, studying, or conducting research. Filings for the J-1 Visa recipients at issue in the visa fraud scheme indicated they promised that they would not work on sponsored research, or research that is funded by private business.

Under these J-1 Visas, the Chinese Nationals were required to work at Georgia Tech in Atlanta, Georgia, as their "site of activity" but were shown by evidence at the hearing to have been working for ZTEC at its subsidiary's New Jersey laboratory. During the course of the conspiracy, Dr. Yu allegedly caused Georgia Tech to sponsor Chinese Nationals for J-1 Visas, then he leased apartments near ZTE in New Jersey where these Chinese Nationals would reside and work, and caused or facilitated the J-1 Visa holders to work at ZTE in New Jersey instead of at their designated "site of activity" at Georgia Tech.

The Government presented evidence through an FBI Special Agent who has been working on the visa fraud case in the Northern District of Georgia. This Special Agent was knowledgeable and credible.

The testimony established that Dr. Yu was the Director of the ZTE TX laboratory in New Jersey (not to be confused with ZTE USA based in Richardson, Texas) and had a preexisting relationship with Professor Chang, a professor at Georgia Tech and a co-conspirator. Government exhibits showed Dr. Yu was selecting Chinese scientists to work in his lab by recruiting them and then sending their names to Professor Chang by email. Upon receipt of such an email, Professor Chang would complete a university form to start the process to obtain a J-1 Visa for that individual through the university's sponsorship program permitted by the Department of State. The information Professor Chang provided and certified, on six forms for six individuals marked as Defendant's Exhibit 6, was materially not true.

The J-1 Visa required the Chinese National scientists to work at Georgia Tech in Atlanta, Georgia. Testimony and evidence showed, instead, that these scientists worked at ZTE TX in Morristown, New Jersey. Confirming this fact, the Agent described the Georgia Tech laboratory door logs and records. It is fair to say that these J-1 Visa holders were rarely, and sometimes never, in the Georgia Tech lab. In contrast, the Government provided exhibits showing leases for apartments in New Jersey near the ZTE lab and paid for by ZTE. These leases showed some of the J-1 Visa holders as residents. It is highly unlikely these J-1 Visa holders lived in New Jersey, in housing paid for by ZTE, while commuting daily to Georgia more than 850 miles away.

Despite the J-1 Visa indicating that one of the Chinese Nationals was physically working at Georgia Tech, Dr. Yu revealed that ZTE was the de facto employer when he directed Georgia Tech to increase the salary of that J-1 Visa holder who was working in his New Jersey lab. And according to testimony, this instruction for payment by Dr. Yu was followed by Professor Chang when he directed payment to be made at Georgia Tech.

To succeed, this scheme required money, and ZTE provided it. ZTE would send money to Georgia Tech, which would then pay money to the J-1 Visa holder who was working at ZTE TX (the company name of the New Jersey lab operation). In fact, the Government showed that ZTEC, ZTE TX's parent company in China, reviewed and provided the funds to Georgia Tech. Government's Exhibits 3, 4, 5, and 6, in addition

to witness testimony, shows the parent company participation in and funding of the scheme.

To emphasize the connection with ZTE TX's parent company, ZTEC, Government Counsel had this brief but significant exchange with the Agent on redirect:

> Q: Okay. And in the reimbursement forms, under cross-examination, there's a financial link between ZTE in China and ZTE in Texas, correct?
>
> A: Correct. It's ZTE China that is required to review and approve these expenses for ZTE TX [the New Jersey lab].
>
> Q: And based on the investigation, does ZTE TX have any other client besides ZTE in China?
>
> A: No.

The approval by ZTEC of its U.S. lab director's activities also underscores the fact that Dr. Yu was acting in the scope of his employment during the conspiracy.

ZTEC claimed that Georgia Tech was the lone bad actor in the visa fraud scheme, focusing on the instructions for completing the DS-2019 form, also called the Certificate of Eligibility for Exchange Visitor J-1 Status and Government's Exhibit 9. The Defendant argued that because the form was completed by a sponsor, an employee of the university, that ZTEC is not responsible for the criminal act. Rather, the evidence showed Dr. Yu, ZTE TX's lab director, led the effort to bring the highly skilled scientists to the United States under the false pretense of performing research at Georgia Tech. Georgia Tech's role in the conspiracy is a question outside the Court's purview at this

10

stage, and the finger pointing to take the focus off the actions of ZTEC looked like pointing in a crowded forest of squirrels. Georgia Tech is not on felony probation in this Court.

The Defendant also presented evidence that the J-1 Visa holders were permitted to work on corporate sponsored programs, such as FiWIN—a cooperative project among universities and technology companies—as described in Defendant's Exhibit 8. It argued that both ZTE TX and Georgia Tech, along with others in the industry, were a part of FiWIN and thus a Georgia Tech sponsored J-1 Visa holder could be appropriately working in the ZTE New Jersey lab. In response, the Government focused on the paperwork filled out by Professor Chang when he supplied the information for the J-1 Visa application which committed that no "sponsored research" would be done by the J-1 Visa holders.

The Defendant presented arguments that recruiting highly skilled workers was acceptable and encouraged, that foreign nationals could legally work on corporate sponsored research projects, that corporate housing was routine and a fixed cost in business, and that compensation to a visa-holder was legal. While each point may be valid standing alone, each point cannot be considered independent of one another; the evidence showed none of this was allowable under the J-1 Visa rules pertaining to these individuals.

After arguing that the Company could not be revoked as a matter of fact, ZTEC's Counsel argued that it could not be revoked as a matter of law because a corporation

cannot be held responsible for acts of its subsidiaries. Counsel began by acknowledging that the Court has already defined the "defendant organization" as ZTE Corporation. Additionally, Counsel acknowledged that the Court has appropriately applied to the defendant organization the statutory requirement of 18 U.S.C. § 3563(a)(1) to "provide as an explicit condition of a sentence of probation that the Defendant not commit another federal, state, or local crime during the term of probation." Counsel then articulately and succinctly outlined the fundamental principles of corporate separateness of subsidiaries, emphasizing precedent requiring exceptional circumstances to set aside these principles.

In response, the Government first pointed out that the Court in the Plea Agreement already defined "defendant organization" to include ZTEC and its subsidiaries and affiliates. ZTEC agreed to the 11(c)(1)(C) Plea Agreement in this case, which states in paragraph 7: "ZTEC agrees that it and its subsidiaries, divisions, segments, and affiliates will not commit any felony violation of United States Federal law during the . . . term of probation."

Even more significantly, the Government pointed out that ZTEC has acknowledged its understanding of the Court's interpretation of "defendant organization" in its own pleading when it asked the Court to "Confirm [the] Plea Agreement and Probation Conditions." Doc. No. 145. In this motion, ZTEC discussed the unintended consequences if a control standard was not used in defining subsidiaries and affiliates—it would "immunize uncontrolled entities that engage in conduct

12

relating in any way to the export control violations ZTEC disclosed before it pleaded guilty" [Government Counsel quoting the Defendant's pleading].

> GOVERNMENT: And then it says, "That interpretation would also put ZTEC in violation if entities beyond its control commit any felony violation of United States federal law." [Government Counsel then argued:] Implicit in that statement is an acknowledgment on their part, and an understanding on their part, that when the Court used the term "Defendant organization" it included subsidiaries of ZTEC.
>
> THE COURT: That they have control.
>
> GOVERNMENT: Over which they have control, correct. And to interpret it otherwise would really lead to the absurd situation where ZTE TX could go on a corporate crime spree and there would be no consequences. It could turn its parking lot into a toxic waste site. It could engage in antitrust bid rigging, or it could actually commit export control violations, and their argument would be there would be no consequence for probation purposes if the [controlled] subsidiary engaged in export control violations. Again, it's Your Honor's provision, Your Honor's interpretation, but I think everybody understood it to include the subsidiary.

Trying to "have it both ways" highlights the corporate representative for ZTEC at the hearing. Mr. Zhenping Sun, whose primary duties are as an employee of ZTE USA, was notified just seven days before appearing in court that he would be the official corporate representative of ZTEC and produced a letter of authorization to do so. Mr. Sun showed great respect for the Court, and he showed he knew nothing about this case. ZTEC appears to use the parent company and subsidiaries fluidly when it is convenient to do so.

## IV. Analysis

The Court now turns to the question of probation revocation. The Court agrees with the Government that the Defendant cannot have it both ways. The Court finds that ZTE TX's director was acting in the scope of his employment at all relevant times and thus finds that ZTEC was legally responsible for the actions of Dr. Yu that contributed to this scheme to defraud. Here the parent corporation is criminally responsible for controlled subsidiaries, or it is responsible by agreement as memorialized in the original felony guilty plea, which is the reason for its felony probation in this case.

When deciding whether to revoke, the Court has considered three key issues: (1) the mitigation offered by the defense, (2) the progress and shortcomings of the Company's compliance, and (3) the open question as to the tools left in the toolbox to punish the company.

(1)  Mitigation

The Company stressed to the Court in argument that these visa fraud-related events occurred more than three years ago, most of those three years have been under new management, and this new leadership brought with it an improved export compliance program. The Court does not disagree. The Company has made strides in its export control and compliance programs, which were effectively nonexistent when it was originally sentenced.

The Company is under new management, having fired all senior executives in 2018. However, ZTEC did not fire those executives until the Monitor identified the failure that led to ZTEC's first probation violation in 2018 and the Company was forced to do so by the Department of Commerce. It should be noted that this was required by the Department of Commerce after it suspended ZTEC's ability to sell controlled technology, essentially suspending ZTE from doing any business in the United States; in other words, the company only cleaned up its act after getting caught . . . again.

Although the leadership team was replaced, the outgoing executives selected their successors. The Monitor has reported to the Court that even today many of the "fired" executives remain involved in ZTEC subsidiaries and affiliates. Moreover, the evidence presented shows that ZTEC continued to make payments for and in support of the visa fraud conspiracy through 2019—months after the culpable executives were terminated from the parent company in July 2018.

It is concerning that ZTEC did not disclose this compliance failure to the Court. ZTEC is a felon on felony probation—which comes with the obligation to disclose bad behavior to this Court, like a drug addict on felony probation has the obligation to inform the Court if he uses drugs again or commits another crime. Add the concept that a strong compliance program is displayed, in part, by identifying compliance issues or failures and then reinforcing those relevant processes, and ZTEC failed to meet these

benchmarks. ZTEC's record of compliance can be summarized in one word—"sometimes."

    (2)    Holding the Company Accountable

While it does not carry the day, the Defendant's mitigation evidence and argument is relevant and is a consideration in the Court's decision whether to revoke ZTE Corporation. Similarly, whether and how ZTEC has made progress to institutionalize compliance is a consideration.

ZTE is not a perfect corporation and is not completely trustworthy. The Monitor Team caught the Company not abiding by the plea agreement – to fire the Board of Directors, CEO, and other senior leaders and deny their bonuses – which resulted in the Government suspending the company from doing business. The Monitor's duties could have been concluded two years ago, but in 2018 the Government and Defendant reached an agreement for the probation to continue.

The new company leaders inherited one of the largest telecommunications companies in the world with virtually zero compliance program. Now, ZTE has compliance programs in its parent corporation and all controlled subsidiaries even if their true effectiveness is questionable.

The Court-appointed Monitor in this case has tirelessly worked with a team of attorneys and other professionals—including former government investigators and specialized experts in exports, compliance, and financial investigations—to assess and audit compliance programs throughout the company and its controlled subsidiaries

16

worldwide. The work has been done with some cooperation by ZTEC at times and despite ZTEC stonewalling at other times.

ZTEC would not have made much forward progress without the Court-appointed Monitor. The Monitor Team has done excellent work, which has been worldwide even during the COVID pandemic. There is much more to do. But the work to resolve issues and weaknesses at the parent company and its subsidiaries will be left to the Department of Justice's investigations and to the other monitor, the SCC, which reports to the Commerce Department and has six more years of its original ten-year monitorship.

(3) Punishment Options Remaining

The final consideration in whether to revoke is the open legal question regarding whether this Court may revoke and resentence ZTEC anew or whether corporate criminal probation is strictly limited to five years even if a defendant violates its felony probation. If the Court has also levied the maximum financial penalty, then the question is whether the Court has any further power to punish ZTEC other than the revocation itself.

If this Defendant were an individual instead of an organization, then the Court would have the option of sentencing it to a term of imprisonment. It seems counterproductive and against public policy to have a corporate defendant worthy of a maximum sentence and maximum fine yet be left with little to no incentive to comply or cooperate after the maximum fine and term of probation are imposed. This legal

problem leads only to a cavalier attitude by a felon corporation, like ZTEC. The Court has seen some of this attitude during the last year of probation.

## V. Conclusion

This Court finds the allegations of conspiracy to commit visa fraud as contained in the Georgia indictment against the company to be TRUE. But the Court does not revoke and resentence ZTEC at this time after balancing the prior mitigation evidence, the work of the Monitor Team, and the open question about legal tools left for the Court.

As to ZTEC's future, the Court encourages the Government to pursue any reasonable charges and criminal or civil penalties in all cases known and currently unknown. This is especially true for the three other matters raised by the Monitor: failure to implement compliance programs at all its affiliates, failed to correct inappropriate exports of controlled items, and untested or flawed compliance regulating computer systems.

ZTEC has the choice in the future to follow the law of this country and to be a truthful and law-abiding partner—or not. Its choice will have grave consequences for both China and the United States of America.

SO ORDERED.

Signed March 22ʳᵈ, 2022.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE