

**ORIGINAL**

*CLERK OF DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2022 JUN 27  PM 12: 49

DEPUTY CLERK___ MS ___

UNITED STATES DISTRICT COURT
*for the* NORTHERN DISTRICT *of* TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*v.*<br>ZTE CORPORATION | NO. 3:17-CR-0120K |

# BRIEF OF PROPOSED INTERVENORS
# DOW JONES & CO., INC. AND REUTERS NEWS & MEDIA INC.
# IN SUPPORT OF THEIR MOTION TO INTERVENE
# AND UNSEAL JUDICIAL RECORDS

Katie Townsend*
Jennifer A. Nelson*
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
P: 202.795.9300
F: 202.795.9310
ktownsend@rcfp.org
jnelson@rcfp.org

*Application forthcoming for
admission *pro hac vice*

Thomas J. Williams
State Bar No. 21578500
HAYNES AND BOONE, LLP
301 Commerce Street, Suite 2600
Fort Worth, Texas 76102
P: 817.347.6600
F: 817.347.6650
thomas.williams@haynesboone.com

Laura Lee Prather
State Bar No. 16234200
Michael J. Lambert
State Bar No. 24128020
HAYNES AND BOONE, LLP
600 Congress Ave., Suite 1300
P: 512.867.8400
F. 512.867.8470
laura.prather@haynesboone.com
michael.lambert@haynesboone.com

*Counsel for Media Intervenors*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    I.    For approximately five years, this Court oversaw the corporate probation of a major foreign company. ...................................................................................................2

        A.  In 2017, the Justice Department and ZTE entered a Plea Agreement requiring ZTE to submit to three years of corporate probation under an independent Monitor. ...................................................................................2

        B.  The Court accepted the Plea Agreement but altered how the Monitor was selected and the nature of the Monitor's duties. .......................................4

        C.  The Court later modified ZTE's sentence, expanding the scope of the Monitor's duties and extending ZTE's corporate probation by two years...............................................................................................................6

        D.  In 2022, the Court declined to revoke ZTE's probation but encouraged the Government to pursue additional civil or criminal penalties against ZTE based on concerns raised by the Monitor. ...............................................8

    II.   Media Intervenors are news organizations whose reporting has been stymied by the sealing of records and proceedings in this matter....................................................10

ARGUMENT.......................................................................................................................11

    I.    The Court should grant the Motion to Intervene. .......................................................12

    II.   The Court should grant the Motion to Unseal. ...........................................................12

        A.  The Court should unseal the Sealed Records pursuant to the common law presumption of access. ..............................................................................12

            1.  The Sealed Records are judicial records subject to the common law presumption of access. ...............................................................................12

            2.  The presumption is not overcome. .....................................................17

        B.  The Court should unseal the Sealed Records pursuant to the First Amendment presumption of access...............................................................21

CONCLUSION....................................................................................................................24

CERTIFICATE OF SERVICE.............................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Application of Newsday, Inc.*, 895 F.2d 74, 78 (2d Cir. 1990)........................................................21

*Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
No. CV 11-10230-MLW, 2018 WL 11316801 (D. Mass. June 28, 2018).............................15

*Baltimore Sun Co. v. Goetz*,
886 F.2d 60 (4th Cir. 1989) ...............................................................................................14

*Binh Hoa Le v. Exeter Fin. Corp.*,
990 F.3d 410 (5th Cir. 2021) .......................................................................................*passim*

*Bradley v. Ackal*,
954 F.3d 216 (5th Cir. 2020) ............................................................................... 12, 13, 14

*Carter v. Sw. Airlines Co.*,
No. 3:17-CV-02278-X, 2022 WL 283025 (N.D. Tex. Jan. 31, 2022) .............................. 18, 20

*CBS, Inc. v. U.S. Dist. Ct.*,
765 F.2d 823 (9th Cir. 1985) ........................................................................................22, 23

*City of Greenville, Ill. v. Syngenta Crop Prot.*,
LLC, 764 F.3d 695 (7th Cir. 2014) .....................................................................................14

*Davis v. E. Baton Rouge Par. Sch. Bd.*,
78 F.3d 920 (5th Cir. 1996) ...............................................................................................12

*Doe v. Public Citizen*,
749 F.3d 246 (4th Cir. 2014) .............................................................................................22

*Globe Newspaper Co. v. Superior Ct.*,
457 U.S. 596 (1982) .............................................................................................................1

*Hartford Courant Co. v. Pellegrino*,
380 F.3d 83 (2d Cir. 2004) .................................................................................................22

*In re Hearst Newspapers, L.L.C.*,
641 F.3d 168 (5th Cir. 2011), *as revised* (June 9, 2011)...................................... 12, 22, 23, 24

*June Med. Servs., L.L.C. v. Phillips*,
22 F.4th 512 (5th Cir. 2022) ..................................................................................... 17, 18, 19

*In re Leopold to Unseal Certain Elec. Surveillance Application & Orders*,
964 F.3d 1121 (D.C. Cir. 2020) .............................................................................. 13, 14, 21

ii

*Nixon v. Warner Commc'ns, Inc.,*
  435 U.S. 589 (1978) ............................................................................................12

*Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.,*
  478 U.S. 1 (1986) ...............................................................................................23

*Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.,*
  464 U.S. 501 (1984) ......................................................................................23, 24

*In re Providence Journal Co.,*
  293 F.3d 1 (1st Cir. 2002) ...................................................................................22

*Rocky Mountain Bank v. Google, Inc.,*
  428 F. App'x 690 (9th Cir. 2011) .......................................................................15

*S.E.C. v. Van Waeyenberghe,*
  990 F.2d 845 (5th Cir. 1993) ..............................................................................14

*SEC v. American International Group,*
  712 F.3d 1 (D.C. Cir. 2013) ................................................................................16

*In re State-Record Co., Inc.,*
  917 F.2d 124 (4th Cir. 1990) (per curiam) .........................................................22

*United States v. Aldawsari,*
  683 F.3d 660 (5th Cir. 2012) ..............................................................................12

*United States v. Amodeo,*
  44 F.3d 141 (2d Cir. 1995) .................................................................................14

*United States v. Amodeo,*
  71 F.3d 1044 (2d Cir. 1995) ...............................................................................15

*United States v. Davis,*
  902 F. Supp. 98 (E.D. La. 1995), *aff'd*, 132 F.3d 1454 (5th Cir. 1997) .................12

*United States v. DeJournett,*
  817 F.3d 479 (6th Cir. 2016) ..............................................................................22

*United States v. Graham,*
  257 F.3d 143 (2d Cir. 2001) ...............................................................................22

*United States v. Haller,*
  837 F.2d 84 (2d Cir. 1988) .................................................................................23

*United States v. Hitt,*
  473 F.3d 146 (5th Cir. 2006) ..............................................................................24

iii

*United States v. Holy Land Found. For Relief & Dev.*,
624 F.3d 685 (5th Cir. 2010) ................................................................................. 13, 14

*United States v. HSBC Bank USA*,
863 F.3d 125 (2d Cir. 2017) ........................................................................................17

*United States v. Index Newspapers LLC*,
766 F.3d 1072 (9th Cir. 2014) ....................................................................................22

*United States v. Martin*,
746 F.2d 964 (3d Cir. 1984) .......................................................................................14

*United States v. Ochoa-Vasquez*,
428 F.3d 1015 (11th Cir. 2005)...................................................................................22

*United States v. Sealed Search Warrants*,
868 F.3d 385 (5th Cir. 2017) ................................................................. 13, 14, 17, 18

*United States v. Smith*,
123 F.3d 140 (3d Cir. 1997) .......................................................................................22

*United States v. Snyder*,
187 F. Supp. 2d 52 (N.D.N.Y. 2002) .........................................................................16

*United States v. Valenti*,
987 F.2d 708 (11th Cir. 1993) ....................................................................................22

*United States v. Wecht*,
484 F.3d 194 (3d Cir. 2007), *as amended* (July 2, 2007).........................................14

*United States v. ZTE Corporation*,
No. 22-10333 (5th Cir. May 31, 2022)................................................................. 10, 15

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
913 F.3d 443 (5th Cir. 2019) .............................................................................. 13, 14, 19

*In re Wash. Post Co.*,
807 F.2d 383 (4th Cir. 1986) ................................................................................22, 23

**Other Authorities**

Aruna Viswanatha and Dylan Tokar, *Chinese Telecom Giant ZTE in Dispute With
U.S. Court-Appointed Monitor* (Oct. 15, 2021), https://perma.cc/4DDH-
PD4G;.................................................................................................................. 10, 21

Aruna Viswanatha et al., *ZTE to Pay $892 Million to U.S., Plead Guilty in Iran
Sanctions Probe*, Wall St. J. (Mar. 7, 2017) ................................................................2, 11

Dan Strumpf et al., *Judge Frees China's ZTE From Some U.S. Oversight*, Wall
St. J. (Mar. 23, 2022)..............................................................................................11

Fed. R. Crim. P. 35................................................................................................23

Karen Freifeld, *China's ZTE exits probation after U.S. court ruling, shares soar*,
Reuters (Mar. 23, 2022)..........................................................................................11

Karen Freifeld, *Exclusive—U.S. experts resign from monitoring China's ZTE
Corp: sources*, Reuters (Dec. 21, 2017).................................................................21

Karen Freifeld, *U.S. experts resign from monitoring China's ZTE Corp: sources*,
Reuters (Dec. 21, 2017)..........................................................................................11

Karen Freifeld, *U.S. judge says China's ZTE violated probation; extends
monitor's term*, Reuters (Oct. 3, 2018)..................................................................11

## INTRODUCTION

Proposed intervenors Dow Jones & Co., Inc. ("Dow Jones") and Reuters News & Media Inc. ("Reuters") (together, "Media Intervenors") submit this Memorandum of Law in support of their Motion to Intervene and Unseal Judicial Records, by which Media Intervenors seek an order unsealing all docket entries, judicial documents, and/or transcripts electronically docketed or filed under seal in this case (hereinafter the "Sealed Records").

Public access to criminal proceedings and court records is fundamental to ensuring public confidence in the criminal justice system. It both "enhances the quality and safeguards the integrity of the factfinding process" and "fosters an appearance of fairness, thereby heightening public respect for the judicial process." *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 606 (1982). Indeed, "the default expectation is transparency—that what happens in the halls of government happens in public view. Americans cannot keep a watchful eye, either in capitols or in courthouses, if they are wearing blindfolds." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021).

Despite the strong presumption in favor of public access to criminal matters, for approximately five years, the business of this case has been conducted in near-total secrecy; almost all filings and hearings involving the Court's exercise of judicial authority have been sealed, for reasons unknown to the public. This broad exclusion of the press and public stands in stark contrast to the public's weighty interest in access.

This case involves the imposition of historic penalties on one of the largest technology manufacturers in the world, as well as a Chinese company's agreement to an unprecedented level of scrutiny by the United States government. As a result, the case is likely to have significant economic and foreign-policy ramifications. The public's interest in access to these records cannot be overstated.

1

The extensive sealing of records filed in this matter, including the very entries on the Court's docket, violates the presumptive rights of access guaranteed to the public by the common law and First Amendment. The Court should therefore permit Media Intervenors to intervene and grant their motion for access to the Sealed Records.

## BACKGROUND

### I. For approximately five years, this Court oversaw the corporate probation of a major foreign company.

Defendant ZTE Corporation ("ZTE") is one of the world's largest manufacturers of telecommunications equipment. *See* Factual Resume at 3, ECF No. 4. It is headquartered in China but "has subsidiaries all over the world, including [in] the United States." *Id.* Indeed, ZTE is "one of the few Chinese consumer brands to break into the U.S. market," and in 2017, it was "the fourth-largest smartphone vendor in the U.S. based on number of units sold." Aruna Viswanatha et al., *ZTE to Pay $892 Million to U.S., Plead Guilty in Iran Sanctions Probe*, Wall St. J. (Mar. 7, 2017), https://perma.cc/8Q2N-F699.

### A. In 2017, the Justice Department and ZTE entered a Plea Agreement requiring ZTE to submit to three years of corporate probation under an independent Monitor.

On March 3, 2017, ZTE pleaded guilty to conspiring to violate U.S. export laws, along with other, related felonies. Plea Agreement 1–3, ECF No. 3. The gravamen of ZTE's offenses—which, as described below, resulted in historic penalties—involved the surreptitious exportation of goods from the United States to Iran. Factual Resume at 3, ECF No. 4. That same day, ZTE and the U.S. Department of Justice ("Justice Department") jointly filed a Plea Agreement. *See generally* ECF No. 3. Pursuant to the Plea Agreement, ZTE consented to a criminal fine of $286.9 million and to forfeiture of an additional $143.4 million. *Id.* at 3–4. ZTE

2

also consented to a three-year period of corporate probation.[1] *Id.* at 3.  As part of its corporate probation, ZTE agreed to "retain an independent, third-party compliance monitor (the 'Monitor')," who would "review and assess in a professionally independent and objective fashion . . . [ZTE's] compliance with the terms of [the] Plea Agreement." *Id.* at 8–9.

The parties elaborated on the Monitor's contemplated role in an attachment to the Plea Agreement titled "Attachment A." *Id.* at 17–23.  Attachment A explained how the Monitor was to be selected: ZTE would "propose to the [Justice] Department three candidates to serve as the Monitor." *Id.* at 17.   According to Attachment A, all of the candidates proposed by ZTE had to possess, "at minimum, the qualifications and experience sufficient in the opinion of the [Justice] Department to properly discharge the Monitor's duties." *Id.*  The Justice Department "retain[ed] the right, in its sole discretion, to accept or reject the Monitor candidates proposed by" ZTE. *Id.*

Attachment A also explained the Monitor's contemplated reporting duties.  The Monitor would, over the course of three years, conduct three reviews of ZTE's policies and procedures for export control. *Id.* at 18, 19.  Before each review, the Monitor would submit a work plan to ZTE and the Justice Department. *Id.* at 20.  If the Monitor and ZTE disagreed about some aspect of the work plan, the Justice Department would resolve the dispute. *Id.*  After each review, the Monitor would submit a written report to ZTE, the Justice Department, and various other federal agencies. *Id.* at 19–20.  Each report would evaluate ZTE's ongoing compliance with the Plea Agreement and would, where warranted, include recommendations for improving ZTE's export-control policies. *Id.* at 18.  If ZTE disagreed with any of the Monitor's findings or

---

[1] Outside of the Plea Agreement, ZTE paid $361 million to the Commerce Department and $100.8 million to the Treasury Department, "pursuant to settlement agreements with those agencies." *Id.* at 4 n.1.  The Commerce Department also "suspended an additional $300,000,000 fine" against ZTE, with the understanding that the fine would be imposed if ZTE violated its settlement agreement with the Commerce Department. *Id.*

3

recommendations, the dispute would go to the Justice Department, and the Justice Department would decide whether to consult with other federal agencies about appropriate next steps. *Id.*

In the Plea Agreement itself, the parties arranged to keep confidential some of the information exchanged between ZTE, the Monitor, and the federal government (the "Government"). *Id.* at 9. Specifically, the parties recognized that certain "materials"—including the Monitor's reports, mandatory certifications made by ZTE's General Counsel, and ZTE's revelations of potential export violations—would "likely include proprietary, financial, confidential, and competitive business information." *Id.* Public disclosure of such information "could," said the Plea Agreement, "discourage cooperation and thus undermine the objectives of [the] Plea Agreement's reporting requirements." *Id.* The Plea Agreement therefore provided that the "materials" in question were "intended to remain and shall remain non-public," unless (1) the Government and ZTE agreed otherwise in writing, or (2) the Government "determine[d] in its sole discretion that disclosure would be in furtherance of the Government's discharge of its duties and responsibilities or [was] otherwise required by law," in which case the Government would "give[] notice to" ZTE. *Id.* at 9–10.

**B.    The Court accepted the Plea Agreement but altered how the Monitor was selected and the nature of the Monitor's duties.**

Two weeks later, at ZTE's rearraignment, the Court accepted the Plea Agreement. *See* Tr. of Rearraignment Hrg. 21:4–5. The Court did not, however, accept the original version of Attachment A. Tr. of Sent'g Hrg. 4:3–4; *id.* at 4:24–5:10. Instead, the Court accepted an altered version of Attachment A, titled "Attachment A (Modified)" (herein, "Modified Attachment A"). *Id.*; *see also* ECF No. 14 at 1.

Unlike the original version of Attachment A, Modified Attachment A made the Court an integral part of ZTE's corporate monitorship. *See generally* ECF No. 14. For instance, rather

4

than permitting the Justice Department to select the Monitor after ZTE proposed candidates, Modified Attachment A named a court-appointed Monitor: James M. Stanton. *Id.* at 1; *see also* Tr. of Rearraignment Hrg. at 11, ECF No. 17 (recording Court's statement that "I have chosen Mr. James Stanton; or if something happens to him or if I choose to change, that would be who it would be, as set out in Attachment A as modified today."). It is unclear how or why the Court decided to appoint Mr. Stanton; although a subsequent filing in this matter refers to an "Order Appointing Corporate Monitor [Doc. No. 13]," that order, and the docket entry associated with it, are not publicly available. Letter from James M. Stanton to The Hon. Ed Kinkeade at 1, ECF No. 29.

Modified Attachment A also changed the Monitor's relationship to the Court. The original version of Attachment A described the Monitor as an "independent third party," ECF No. 3 at 3, but Modified Attachment A stated that the Monitor was a "judicial adjunct pursuant to Federal Rule of Civil Procedure 53," ECF No. 14 at 3, and explained that the Court would manage the Monitor's performance, review the Monitor's findings and recommendations, and adjudicate related disputes among the parties. Specifically, Modified Attachment A empowered the parties to inform the Court of, and request a hearing on, "any issues concerning the monitorship at any time." *Id.* at 7. It required the Monitor to submit to the Court for approval or disapproval the Monitor's pre-review work plans, and it stated that the Court—rather than the Justice Department—would resolve any disputes arising from said work plans. *Id.* at 4. It also required the Monitor to file with the Court his written reports on ZTE's compliance with the Plea Agreement. *Id.* As with the Monitor's work plans, if one of the Monitor's reports gave rise to a dispute, Modified Attachment A stated that the Court would resolve it. *Id.* at 5.

Finally, whereas the original version of Attachment A made no provision for sealing filings or court proceedings, Modified Attachment A stated—without explanation—that "[a]ll reports, submissions, and other materials encompassed by" the Plea Agreement and Modified Attachment A would "be filed under seal," and that "all Court proceedings" would "be conducted *in camera*." *Id.* at 7.

### C. The Court later modified ZTE's sentence, expanding the scope of the Monitor's duties and extending ZTE's corporate probation by two years.

Mr. Stanton's monitorship began on July 20, 2017. *See* Letter from James M. Stanton to The Hon. Ed Kinkeade, ECF No. 29. For approximately 15 months thereafter, no new substantive entries appeared on the public docket. On October 3, 2018, the Court entered an order that expanded the scope of the Monitor's duties and extended ZTE's corporate probation. *See generally* Order Modifying Conditions of Probation, ECF No. 69.

The Court explained that its order was predicated on a report and recommendation filed by the Monitor—specifically, the "Second Supplemental Report of Third-Party Corporate Compliance Monitor, Submission of 2-Year Work Plan, and Recommendation to Modify Conditions of Probation." *Id.* at 1. Although the Monitor's report and recommendation was not placed on the public docket, the Court referred to it as "Doc. No. 62." *Id.* According to the Court, ZTE had "made false statements to the Monitor," and "[a]s a result" of those false statements, the Monitor "recommend[ed] modifying [ZTE's] probation pursuant to" Federal Rule of Criminal Procedure 32.1(c). ECF No. 69 at 1–2. The Court noted that ZTE had waived its right to a hearing and had "accept[ed] the proposed modifications" to the conditions of probation. *Id.* at 2.

"In light of the Monitor's recommendations," and after "considering the factors set forth in Section 3553(a)," the Court ordered ZTE to retain the Monitor for an additional two years—

through March 22, 2022.[2] *Id.* at 3. The Court also instructed the Monitor to submit to the Court at least four more reports, each of which was to contain the Monitor's "findings, conclusions, and recommendations" as to ZTE's compliance with the Plea Agreement. *Id.* at 4. In addition to these mandated reports, the Court instructed the Monitor to submit an unspecified number of "interim reports, in the Monitor's discretion," *id.*, and reiterated that the Monitor was a "court-appointed adjunct," *id.* at 5, who "report[ed] to the Court," *id.* at 7.

In March of 2022, it came to light that the Court had not only modified the conditions of ZTE's probation on October 3, 2018, but had also "imposed the additional $300 million fine that had been suspended" pursuant to ZTE's separate settlement with the Commerce Department. Order at 4, ECF No. 191 (Mar. 22, 2022). The Court's 2018 order modifying the conditions of ZTE's probation makes no reference to the $300 million fine suspended by the Commerce Department, and Media Intervenors are unaware of any public filing in this matter that directly addresses the Court's decision to impose the fine. *See generally* ECF No. 69; *see also* Tr. of Sentencing Hrg. on Mar. 22, 2017 at 7, ECF No. 18 (Court: "I just want to make sure you understand that if ZTE Corporation violates the terms of this corporate monitor, I'm going to recommend to the Commerce Department, although that's outside of this part of my agreement, that they take the $300 million at that time.").

Media Intervenors understand that ZTE reached an agreement with the Government on the imposition of the $300 million Commerce Department fine. *See* Order at 4, ECF No. 191 (stating that, in 2018, "the Court accepted an agreement between [ZTE] and the government . . .

_____

[2] The Court later described the extension of ZTE's probation as the result of an agreement between ZTE and the Government. ECF No. 191 at 16 ("The Monitor's duties could have been concluded two years ago, but the Government and Defendant reached an agreement for the probation to continue."); *see also* Tr. of Revocation Hrg. at 16:25–17:5, ECF No. 178.

and imposed the additional $300 million fine that had been suspended"). The Court has stated that its involvement in that agreement was minimal; the extent of the Commerce Department's involvement is unclear. *See id.*; *see also* Tr. of Revocation Hrg. at 16:25–17:5, ECF No. 178 (Court: "[In 2018,] after being caught again, violating the law again in the United States, the Defendant negotiated with the Government without me having to be involved, without the monitor, and both the Government and the Defendant agreed to a modification of the terms of probation and a waiver of the hearing, extended the probation by two years, continued the monitorship, and imposed that $300 million fine."). Media Intervenors have been unable to locate the terms of the referenced agreement on the docket in this case.

### D. In 2022, the Court declined to revoke ZTE's probation but encouraged the Government to pursue additional civil or criminal penalties against ZTE based on concerns raised by the Monitor.

On February 24, 2022, the Court held "a hearing to resolve outstanding motions and to address . . . four areas of concern" regarding ZTE's compliance with the terms of its probation. ECF No. 191 at 5. That hearing was closed to the public, and the public docket contains no notice of the hearing and no entries for documents filed in connection therewith.[3] However, in a subsequent public order, the Court conveyed limited information regarding "four areas of concern" related to ZTE's compliance. Order at 5, ECF No. 191. Based on the Court's description, at least three areas of concern appear to have arisen from the Monitor's reporting: "(1) [ZTE's] failure to implement compliance programs at all of its subsidiaries and affiliates; (2) [ZTE's] failure to correct inappropriate exports of controlled items; and (3) [ZTE's] untested or flawed compliance-regulating computer systems." *Id.*

---

[3] There are no public docket entries for the "outstanding motions," *id.*, that were before the Court at the February 24 hearing. Media Intervenors therefore do not know how many motions were at issue, what relief they sought, or how the Court ultimately disposed of them.

The fourth area of concern arose from a separate criminal prosecution in the Northern District of Georgia, in which the director of a ZTE subsidiary was charged with conspiracy to commit visa fraud. *Id.* According to the Court, the Justice Department "stated that there was probable cause" to believe that ZTE had "violated the terms of its probation, specifically for the charges pending in the Northern District of Georgia." *Id.* The Government "was not in a position to assess and establish" the other "potential revocation items identified by the Monitor," given the complexity of the relevant law. *Id.* As a result, "the Court notified the parties of potential revocation on the Georgia charges" and scheduled a revocation hearing "pursuant to Rule 32.1." *Id.* On an unknown date, the Government filed a motion to make the revocation hearing public. *See* Order, ECF No. 158. The Government's motion, and the docket entry referring to it, are sealed.[4] Following the Government's motion, the Court (1) ordered ZTE to brief whether the revocation hearing should be closed to the public and (2) ordered that "notice of the revocation hearing be made public . . . ." *Id.* ZTE filed a one-paragraph response in which it "agree[d] with the Government" that the revocation hearing "should be public . . . ." ECF No. 159.

The Court's ruling on the Government's motion is not available to the public, but it appears that the motion was granted: on March 14, 2022, the Court held a public hearing on the revocation of ZTE's parole. *See generally* ECF Nos. 175 (minute entry) and 178 (transcript); *see also* Order, ECF No. 191 at 7 ("This case has largely been sealed but, by agreement of all parties, [the revocation hearing] was unsealed and open to the public."). Before the hearing, ZTE filed two redacted briefs on the public docket; after the hearing, ZTE filed a redacted letter, with

---

[4] In a public order, the Court referred to the Government's motion as "Dkt. 157." Order, ECF No. 158.

exhibits, on the public docket. ECF Nos. 164, 170, 177. The public docket contains no entries for briefs or other hearing materials filed by the Government.

On March 22, 2022, the Court issued a public order in which it declined to revoke ZTE's probation and impose a new sentence on the company. ECF No. 191 at 18. The Court reached its decision "after balancing the prior mitigation evidence, the work of the Monitor Team, and the open question about legal tools left for Court." *Id.* Additionally, the Court indicated that ZTE's term of corporate probation—and, thus, the work of the court-appointed Monitor—was at an end. *Id.* at 17; *see also* Notice of Appeal, ECF No. 192 (treating order of March 22 as final order). But the Court urged the Government to act on the Monitor's findings:

> As to [ZTE's] future, the Court encourages the Government to pursue any reasonable charges and criminal or civil penalties in all cases known and currently unknown. This is especially true for the three other matters raised by the Monitor: failure to implement compliance programs at all of its affiliates, fail[ure] to correct inappropriate exports of controlled items, and untested or flawed compliance regulating computer systems.

ECF No. 191 at 18.

To date, the majority of docket entries and filings in this matter remain under seal and unavailable to the public. On April 5, 2022, ZTE noticed an appeal to the Court of Appeals for the Fifth Circuit, ECF No. 192; its opening brief is currently due on July 13, 2022, *see* Briefing Notice, ECF No. 00516337828, *United States v. ZTE Corporation*, No. 22-10333 (5th Cir. May 31, 2022).

**II.    Media Intervenors are news organizations whose reporting has been stymied by the sealing of records and proceedings in this matter.**

Dow Jones is one of the world's leading providers of political, commercial, and legal news. Among other properties, it owns and publishes The Wall Street Journal, which has reported on this matter. *See, e.g.*, Aruna Viswanatha and Dylan Tokar, *Chinese Telecom Giant ZTE in Dispute With U.S. Court-Appointed Monitor*, Wall St. J. (Oct. 15, 2021),

https://perma.cc/4DDH-PD4G; Aruna Viswanatha et al., *ZTE to Pay $892 Million to U.S., Plead Guilty in Iran Sanctions Probe*, Wall St. J. (Mar. 7, 2017), https://perma.cc/8Q2N-F699; Dan Strumpf et al., *Judge Frees China's ZTE From Some U.S. Oversight*, Wall St. J. (Mar. 23, 2022), https://perma.cc/Z5CP-VAA3. The Wall Street Journal's newsgathering and reporting has been significantly hindered by the sealing of proceedings and records in this matter.

Similarly, Reuters is one of the largest news providers in the world. Its publications reach billions of viewers and readers, and it has reported on this matter. *See, e.g.*, Karen Freifeld, *China's ZTE exits probation after U.S. court ruling, shares soar*, Reuters (Mar. 23, 2022), https://perma.cc/FYP2-W5J8; Karen Freifeld, *U.S. judge says China's ZTE violated probation; extends monitor's term*, Reuters (Oct. 3, 2018), https://perma.cc/GEX2-BNUY; Karen Freifeld, *U.S. experts resign from monitoring China's ZTE Corp: sources*, Reuters (Dec. 21, 2017), https://perma.cc/U5DN-3S49. Reuters' newsgathering and reporting has been significantly hindered by the sealing of proceedings and records in this matter.

## ARGUMENT

The press and public have a presumptive right of access to the Sealed Records pursuant to both the common law and the First Amendment. As explained below, both the common law and constitutional rights of access allow judicial proceedings to be closed, and judicial records to be sealed, only if—and only to the extent—necessary to protect a compelling interest in secrecy. Both the common law and First Amendment require that a court considering closure or sealing conduct an on-the-record analysis explaining why the public's interest in access to the specific proceeding or record is overcome. And both require that closure or sealing be no broader than necessary to serve the compelling interest(s) identified by the court. The extensive sealing of docket entries, proceedings, and records in this matter fails to satisfy these requirements.

11

## I.     The Court should grant the Motion to Intervene.

It is well-established in the Fifth Circuit that non-party members of the news media, like Media Intervenors, have standing to petition for access to court records or proceedings, and may intervene in criminal matters for that limited purpose. *See, e.g., In re Hearst Newspapers, L.L.C.,* 641 F.3d 168, 172–73 (5th Cir. 2011), *as revised* (June 9, 2011) (noting that district court had granted media intervenor's motion to intervene for the purpose of seeking unsealing and challenging closure of proceedings); *see also United States v. Aldawsari,* 683 F.3d 660, 664 (5th Cir. 2012) (holding that journalist had standing to challenge gag order entered in criminal proceeding); *Davis v. E. Baton Rouge Par. Sch. Bd.,* 78 F.3d 920, 927 (5th Cir. 1996) (holding that news agencies had standing to challenge district court's confidentiality orders because the orders "impede[d] the news agencies' abilities to gather the news and to receive protected speech"); *United States v. Davis,* 902 F. Supp. 98, 101 (E.D. La. 1995), *aff'd,* 132 F.3d 1454 (5th Cir. 1997) (granting newspaper's motion to intervene in criminal proceeding for purpose of challenging gag order; stating that newspaper "clearly ha[d] standing"). Accordingly, Media Intervenors' Motion to Intervene should be granted.

## II.    The Court should grant the Motion to Unseal.

### A.     The Court should unseal the Sealed Records pursuant to the common law presumption of access.

#### 1.     *The Sealed Records are judicial records subject to the common law presumption of access.*

Under the common law, the public has a presumptive right of access to judicial records. *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597–99 (1978); *Bradley v. Ackal,* 954 F.3d 216, 224 (5th Cir. 2020) ("The public 'has a common law right to inspect and copy judicial records.'") (quoting *S.E.C. v. Van Waeyenberghe,* 990 F.2d 845, 848 (5th Cir. 1993)). This right "is a fundamental element of the rule of law." *Binh Hoa Le,* 990 F.3d at 417 (quoting *In re*

12

*Leopold to Unseal Certain Elec. Surveillance Application & Orders*, 964 F.3d 1121, 1123 (D.C. Cir. 2020) ("*Leopold*")). Among other things, it "promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness, and serves as a check on the integrity of the system." *Bradley*, 954 F.3d at 224 (brackets in source omitted); *accord United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017) ("*Sealed Search Warrants*"); *see also Binh Hoa Le*, 990 F.3d at 417 ("[A]ccessibility enhances legitimacy, the assurance that things are on the level."); *United States v. Holy Land Found. For Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) ("*Holy Land Found.*") ("The principle of public access to judicial records furthers not only the interests of the outside public, but also the integrity of the judicial system itself.").

Judicial records are broadly defined. Filings intended to influence a court's decision or submitted for the court's approval are judicial records. *See infra*; *see also Binh Hoa Le*, 990 F.3d at 420 (differentiating between "the *discovery* stage, when parties are exchanging information," and "the *adjudicative* stage, when materials enter the court record," for purposes of applying the common law presumption). Filings that do not seek relief or otherwise attempt to influence the court's exercise of the judicial function have also been deemed judicial records. *Bradley*, 954 F.3d at 227 n.8 ("Even if the settlement terms were not submitted for the district court's approval at the post-conference meeting, the recording [of the meeting at which the terms were discussed] may remain a judicial record"); *see also Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 451 (5th Cir. 2019) (explaining that "*once* [a document is] *placed into the record*," it "becomes a judicial record" for purposes of the common law presumption) (emphasis in original) (internal quotation marks omitted); *Leopold*, 964 F.3d at 1129 (holding that dockets are "judicial records because they are created and kept by courts *for the purpose of memorializing or*

13

*recording matters of legal significance*") (emphasis added) (internal quotation marks and alterations omitted).

The Fifth Circuit has expressly held that many types of materials filed in district courts are judicial records subject to the common law presumption of access. For example, a district court's orders and opinions are judicial records. *Holy Land Found.*, 624 F.3d at 690. "Legal arguments, and the documents underlying them," are judicial records. *Binh Hoa Le*, 990 F.3d at 421. "[S]ettlement agreements that are filed and submitted to the district court for approval" are judicial records. *Van Waeyenberghe*, 990 F.2d at 849. A transcript reflecting the parties' oral report on a settlement agreement is a judicial record. *Id.* at 850; *see also Bradley*, 954 F.3d at 225–27 (applying common law presumption to minutes of a settlement conference and post-conference meeting). Pre-indictment applications for search warrants, and the materials underlying them, are judicial records. *Sealed Search Warrants*, 868 F.3d at 390. A "mix of emails and draft contracts" produced by an insurance company pursuant to a district court's ruling on a discovery motion is a judicial record. *Vantage Health Plan*, 913 F.3d at 447. Other circuits likewise recognize that the common law presumption applies broadly.[5]

Many of the Sealed Records are judicial records. Because even the docket entries for the Sealed Records are hidden from the public, Media Intervenors cannot identify all of the Sealed Records with specificity. It appears, however, that during the approximately five years between the parties' submission of the Plea Agreement, ECF No. 3, and the Court's order declining to revoke ZTE's probation, ECF No. 191, the parties filed motions, supporting briefs, exhibits, and

---

[5] *See, e.g., United States v. Wecht*, 484 F.3d 194, 209 (3d Cir. 2007), *as amended* (July 2, 2007); *United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 63–64 (4th Cir. 1989); *Leopold*, 964 F.3d at 1128–29 ; *City of Greenville, Ill. v. Syngenta Crop Prot.*, LLC, 764 F.3d 695, 697 (7th Cir. 2014).

14

agreements in the nature of settlements; the Monitor filed work plans requiring the Court's approval and reports containing findings and recommendations for the Court's consideration; the Court held hearings to adjudicate disputes and placed transcripts of those hearings under seal on the docket; and the Court issued rulings. *See, e.g.*, Transcript Order, *United States v. ZTE Corp.*, No. 22-10333 (5th Cir. Apr. 21, 2022) (listing two motions hearings and a telephonic conference with the Court that do not appear on this matter's public docket). For the reasons stated above, these materials and the docket entries associated with them are judicial records subject to the common law presumption of access.

The common law presumption applies to the Monitor's reports, specifically, because: (1) pursuant to ZTE's guilty plea, the court appointed the Monitor as a judicial adjunct; (2) the Court ordered the Monitor to prepare and file reports containing findings and recommendations; (3) the Court retained the authority to approve or disapprove the Monitor's work plans, replace the Monitor, extend the Monitor's term, and expand the scope of the Monitor's duties; and (4) the Court considered the Monitor's findings and recommendations in exercising its judicial authority. Any of these factors alone would make the Monitor's reports subject to the common law right of access, and in combination, they leave no doubt. *See United States v. Amodeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) (holding that a report prepared by "Court Officer" pursuant to consent decree was judicial document to which common law presumption of access applied); *Rocky Mountain Bank v. Google, Inc.*, 428 F. App'x 690, 692 (9th Cir. 2011) (holding that "compliance report" filed by party upon order of court was a "quintessential judicial document" and therefore subject to common law presumption of access); *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, No. CV 11-10230-MLW, 2018 WL 11316801, at *3 (D. Mass. June 28, 2018) (holding report of special master appointed under Rule 53 was "a quintessential judicial

15

record that the public has a presumptive right to see"); *United States v. Snyder*, 187 F. Supp. 2d 52, 64 (N.D.N.Y. 2002) (holding documents on which court relied at parole revocation hearing were judicial records to which strong presumption of access applied).

Media Intervenors are aware of only two federal appellate opinions holding that compliance reports prepared by independent monitors in connection with federal prosecutions are not judicial records for purposes of the common law presumption of access. Both are distinguishable, and their reasoning confirms that the common law presumption applies here.

In *SEC v. American International Group*, 712 F.3d 1 (D.C. Cir. 2013) ("*AIG*"), the D.C. Circuit held that reports prepared by an "independent consultant" and furnished to the Securities and Exchange Commission pursuant to a consent decree were not judicial documents for four reasons: (1) they were not filed with the court; (2) "the independent consultant had no relationship with the court"; (3) the court "did not select or supervise the consultant and had no authority to extend the consultant's tenure or modify his authority"; and (4) the court did not make any decisions based on the reports' contents. *Id.* at 4. The Monitor's reports here differ fundamentally from those at issue in *AIG*. Unlike in *AIG*, the Monitor's reports in this case were filed with the Court. The Monitor was a "judicial adjunct" appointed under the Federal Rule of Civil Procedure governing Special Masters. ECF No. 14 at 3. The Court appointed the Monitor, supervised the Monitor, and retained the authority both to extend his tenure and modify his duties. *See generally* ECF Nos. 14, 69. And the Court expressly considered the Monitor's reports and recommendations in, at minimum, (1) ordering the extension of ZTE's corporate probation and expansion of the corporate monitorship, and (2) declining to revoke ZTE's probation. ECF Nos. 69, 191.

16

In *United States v. HSBC Bank USA* ("*HSBC*"), 863 F.3d 125 (2d Cir. 2017), the Second Circuit held that an independent monitor's report prepared pursuant to a deferred prosecution agreement was not a judicial record because (1) "the district court ha[d] no freestanding supervisory power to monitor the implementation of" the deferred prosecution agreement, *id.* at 137; and (2) the district court had not considered the monitor's report in issuing any rulings, such as an order granting a motion for dismissal under Federal Rule of Criminal Procedure 48(a), *id.* at 141. Neither reason applies here. Unlike in *HSBC*, ZTE's corporate monitorship was not a condition of a deferred prosecution agreement; instead, it was a component of ZTE's criminal sentence, which was predicated on ZTE's guilty plea. *See* Judgment, ECF No. 15. And unlike the deferred prosecution agreement at issue in *HSBC*, Modified Attachment A to ZTE's Plea Agreement gave the Court extensive authority over the scope and duration of the Monitor's duties. *See generally* ECF No. 14. Finally, unlike the district court in *HSBC*, this Court relied on the Monitor's reports in issuing multiple substantive rulings. *E.g.*, ECF Nos. 69, 191.

2.  *The presumption is not overcome.*

While not absolute, the strong common law presumption of access is difficult to overcome. *See June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519–20 (5th Cir. 2022) ("[W]e heavily disfavor sealing information placed in the judicial record."). As the Fifth Circuit has stated, the presumption "can be rebutted only by compelling countervailing interests favoring nondisclosure." *Binh Hoa Le*, 990 F.3d at 421. When deciding whether the presumption is overcome, a court must conduct a particularized analysis; that is, it "must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Id.* at 419 (internal quotation marks omitted); *see also June Med. Servs.*, 22 F.4th at 521 ("It is the solemn duty of the judge to scrupulously examine each document sought to be sealed."); *Sealed Search Warrants*, 868 F.3d

at 397 (requiring district court to conduct "a case-specific balancing of the public's qualified right of access against the interests favoring nondisclosure"); *Carter v. Sw. Airlines Co.*, No. 3:17-CV-02278-X, 2022 WL 283025, at *2 (N.D. Tex. Jan. 31, 2022). As part of its analysis, the court must consider "less drastic alternatives" to sealing, and ensure that "the extent of sealing," if any, is "congruent to the need." *Binh Hoa Le*, 990 F.3d at 420; *accord June Med. Servs.*, 22 F.4th at 521. Should the court ultimately seal all or some of a judicial record, its decision "must be explained at a level of detail that will allow for [appellate] review." *Binh Hoa Le*, 990 F.3d at 420 (internal quotation marks omitted); *Sealed Search Warrants*, 868 F.3d at 397 (emphasizing "the value that the Fifth Circuit has placed on detailed, clear, and specific findings made by a district court" in the sealing context). None of these safeguards—each of which is a requirement for overcoming the common law right of access—were followed here.

There is no sealing order on the public docket—except to the extent that, "[p]ractically speaking," the Court's acceptance of Modified Attachment A "doubles as the court's sealing order." *Binh Hoa Le*, 990 F.3d at 420 n.39. If Modified Attachment A functions as the Court's sealing order, then it falls short in important respects. As noted above, Modified Attachment A states, in relevant part, that "[a]ll reports, submissions, and other materials encompassed by" the Plea Agreement and Modified Attachment A "will be filed under seal and all court proceedings will be conducted in camera." ECF No. 14 at 7. Modified Attachment A offers "no sealing analysis"—*i.e.*, it contains "no document-by-document inquiry," "no grappling with public and private interests," "no consideration of less drastic alternatives," and "no assurance that the extent of sealing [is] congruent to the need." *Binh Hoa Le*, 990 F.3d at 420. There are "no reasons given" and "no authorities cited" for the "perpetual and wholesale" secrecy that Modified Attachment A requires. *Id.* (internal quotation marks omitted).

Though the Plea Agreement asserts that the Monitor's reports, as well as certain other materials exchanged between ZTE and the Government, "will *likely include* proprietary, financial, confidential, and business information," ECF No. 3 at 9 (emphasis added), that language cannot substitute for a sealing analysis by the Court. It does not conclude that the entirety of every document consists of confidential information; it does not discuss filings, sealed or otherwise; and it permits the Justice Department to disclose purportedly confidential materials "in its sole discretion[.]" ECF No. 3 at 10. At most, the Plea Agreement reflects a form of conditional "[p]arty-agreed secrecy" entered for the purpose of "facilitating the efficient exchange of information" from one litigant to another—similar to a protective order in the context of civil discovery. *Binh Hoa Le*, 990 F.3d at 420. The standards that govern sealed filings are different and "far more arduous." *Id.*

The sealing provision of Modified Attachment A makes no reference to the confidentiality concerns raised in the Plea Agreement. In any event, those concerns are not sufficient to justify the wholesale sealing that Modified Attachment A requires. For one thing, the mere agreement of the parties is not enough to "satisfy the stringent sealing-order standard." *Binh Hoa Le*, 990 F.3d at 417-18; *see also June Med. Servs.*, 22 F.4th at 519 ("The public has an interest in transparent court proceedings that is independent of the parties' interests."); *Vantage Health Plan*, 913 F.3d at 451 (stating that a party's "bald assertion of competitive harm is insufficient" to justify sealing). For another, the Plea Agreement does not refer to any particular record; instead, it refers to entire categories of records that the parties expected to be generated following the Agreement's acceptance. Thus, the Plea Agreement does not establish that *all*, or even *any*, of the records filed under seal in this matter contain trade secrets; much less does it establish that such records (if any) cannot be narrowly redacted in a way that serves compelling

19

interests (if any) in the confidentiality of trade secrets while also preserving the public's right of access to the greatest possible extent. *See Binh Hoa Le*, 990 F.3d at 419 (requiring "line-by-line" review). In sum, nothing in the available record establishes a compelling interest in favor of withholding the Sealed Records in their entirety from the public.

In contrast, the public has an overwhelming interest in access to the Sealed Records, for at least three reasons. First, this case involves significant interplay between transnational commerce, U.S. foreign policy, and the rule of law. ZTE is one of the largest technology companies in the world. ECF No. 4 at 3. It is based in China, and its offenses involved exporting goods to Iran in violation of U.S. sanctions. *Id.* Indeed, according to the Court, ZTE's future compliance with, or violation of, U.S. law "will have grave consequences for both China and the United States of America." ECF No. 191 at 18. The major political and economic ramifications of this case are inherently matters of great public concern. *See Carter*, 2022 WL 283025, at *2 ("The presumption against sealing is even greater where, as here, 'the case involves matters of particularly public interest.'") (quoting *June Med. Servs.*, 22 F.4th at 520).

Second, the monetary penalties imposed on ZTE are historic. ZTE was ultimately subjected to forfeitures and fines exceeding $800 million, which the Court described as "the highest monetary settlement for an export case to date." ECF No. 191 at 3. Yet because of the widespread sealing in this matter, the roles played by the Court, the Monitor, the Justice Department, and other federal agencies in the imposition of that penalty—including the $300 million fine imposed on ZTE in 2018—remain largely opaque.

Third, this Court appointed as Monitor an individual who is publicly described as having a close relationship with the Court; in the dedication of his 2016 book, for example, the Monitor wrote that the Court had "guided [him] with grace and judgment as [he] became a lawyer, a

20

husband, a father and a judge." *See, e.g.*, Karen Freifeld, *Exclusive—U.S. experts resign from monitoring China's ZTE Corp: sources*, Reuters (Dec. 21, 2017), https://perma.cc/6H5G-LG6U; Aruna Viswanatha and Dylan Tokar, *Chinese Telecom Giant ZTE in Dispute With U.S. Court-Appointed Monitor*, Wall St. J. (Oct. 15, 2021), https://perma.cc/4DDH-PD4G. The Court's reasons for appointing the Monitor, and the method by which the Monitor was selected, are under seal. This secrecy deprives the public of important insights that could demonstrate the fundamental fairness both of the Monitor's appointment and the process by which the Monitor and the Court evaluated ZTE's compliance with the terms of the Plea Agreement. *See Binh Hoa Le*, 990 F.3d at 417 (stating that public access to judicial records is "vital" because, among other things, it "gives the federal judiciary 'a measure of accountability,' in turn giving the public 'confidence in the administration of justice.'") (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)); *id.* at 418 ("[J]udges must protect public accessibility for three mutually reinforcing reasons: (1) the public has a right to monitor the exercise of judicial authority; (2) judges are 'the primary representative[s] of the public interest in the judicial process;' and (3) the judiciary's institutional legitimacy depends on public trust.") (quoting *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999)) (internal footnotes omitted).

B.   **The Court should unseal the Sealed Records pursuant to the First Amendment presumption of access.**

The First Amendment right of access applies to the Sealed Records.[6] Though the Fifth Circuit has not directly addressed the issue, all other federal courts of appeals to consider it have

---

[6] The First Amendment provides an alternative and independent basis for granting public access to the Sealed Records. But the Court need not reach the First Amendment question if it concludes, as it should, that the common law entitles Media Intervenors to the relief sought herein. *See Leopold*, 964 F.3d at 1126–27 (declining to decide constitutional question when petitioners for access to judicial records were entitled to relief under common law); *Application of Newsday, Inc.*, 895 F.2d 74, 78 (2d Cir. 1990) ("To determine whether there is [a public right

held that the qualified First Amendment right of access applies to judicial records in criminal matters. *See Hearst Newspapers*, 641 F.3d at 176 (collecting cases and noting with approval that "courts of appeals have . . . recognized a First Amendment right of access to documents filed for use in sentencing proceedings"); *see also, e.g., United States v. DeJournett*, 817 F.3d 479, 481 (6th Cir. 2016); *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1030 (11th Cir. 2005); *In re Providence Journal Co.*, 293 F.3d 1, 10 (1st Cir. 2002); *United States v. Graham*, 257 F.3d 143, 147 (2d Cir. 2001); *United States v. Smith*, 123 F.3d 140, 146 (3d Cir. 1997); *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986); *CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823, 825 (9th Cir. 1985).

Similarly, numerous federal courts of appeals have held that the First Amendment right applies to docket sheets and docket entries. *See, e.g., United States v. Index Newspapers LLC*, 766 F.3d 1072, 1085 (9th Cir. 2014) ("*Index Newspapers*"); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004) ("*Pellegrino*"); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993); *In re State-Record Co., Inc.*, 917 F.2d 124, 129 (4th Cir. 1990) (per curiam); *Doe v. Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (noting in the context of civil cases that "[t]he ability of the public and press to inspect docket sheets is a critical component to providing meaningful access" to judicial proceedings). Indeed, absent public access to docket sheets, "the ability of the public and press to attend civil and criminal cases would be merely theoretical," and the presumptive right of the press and the public to inspect judicial documents would likewise be frustrated. *Pellegrino*, 380 F.3d at 93–94.

---

of access to certain records], we first look to the common law, for we need not, and should not, reach the First Amendment issue if judgment can be rendered on some other basis.").

In determining whether the qualified First Amendment right of access applies to a type of criminal proceeding or record, courts look to "two complementary considerations." *Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1, 8 (1986) ("*Press- Enterprise II*"). The first consideration, "experience," concerns whether the proceeding has "historically been open to the press and general public." *Id.* The second, "logic," concerns whether "public access plays a significant positive role in the functioning of the particular process in question." *Id.*

Here, there can be no doubt that the First Amendment right of access applies to the Sealed Records, including all docket entries and underlying records filed in connection with (1) ZTE's plea agreement, re-arraignment, and sentencing; (2) the Court's modification of ZTE's corporate probation, pursuant to the Monitor's report and recommendations and the factors set forth in 18 U.S.C. § 3553(a); and (3) the revocation hearing held on March 14, 2022. There is widespread agreement among the federal courts of appeals, including the Fifth Circuit, that proceedings and records pertaining to a court's acceptance of a defendant's guilty plea and imposition of a defendant's sentence satisfy the "history" and "logic" components of the *Press-Enterprise* test. *E.g.*, *Hearst Newspapers*, 641 F.3d at 176–77; *CBS, Inc.*, 765 F.2d at 826 (motions to reduce sentence under Fed. R. Crim. P. 35); *United States v. Haller*, 837 F.2d 84, 86–87 (2d Cir. 1988) (plea hearings); *In re Wash. Post Co.*, 807 F.2d at 390 (plea hearings).

Where, as here, the First Amendment right of access applies, it can be overcome only by a compelling countervailing interest. *Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*"); *Hearst Newspapers*, 641 F.3d at 181. Any closure or sealing must be narrowly tailored to serve that interest. *Press-Enterprise I*, 464 U.S. at 510; *Hearst Newspapers*, 641 F.3d at 181. To justify sealing, in whole or in part, a court

23

must set forth written findings demonstrating that such closure or sealing is necessary, including an explanation as to why less restrictive alternatives would not suffice. *Press-Enterprise I*, 464 U.S. at 510; *Hearst Newspapers*, 641 F.3d at 181 (requiring "specific, substantive findings made by the district court that closure is necessary to protect higher values and is narrowly tailored to serve such goals"); *id.* ("In making its findings, the court must consider any reasonable alternatives to closure.") (internal quotation marks omitted); *United States v. Hitt*, 473 F.3d 146, 154 (5th Cir. 2006) (emphasizing that courts must consider reasonable alternatives to closure).

Those requirements are not satisfied here. As explained above, the Court has issued no on-the-record findings that identify any compelling interest in favor of keeping records in this matter under seal. Even if such an interest did exist, the wholesale secrecy imposed on the Sealed Records in this matter is not narrowly tailored to serve that interest.[7]

## CONCLUSION

For the foregoing reasons, the Court should grant Media Intervenors' Motion to Intervene and Unseal and enter an order directing the Clerk to unseal the Sealed Records. If the Court concludes that a compelling countervailing interest requires that certain records remain sealed, either in whole or in part, then the Court must issue on-the-record findings that identify that countervailing interest, explain why that interest overcomes the public's interest in access to the relevant records, and demonstrate that the extent of the sealing is no greater than necessary.

---

[7] To illustrate: At the public revocation hearing of March 14, 2022, the Government referred to, and quoted directly from, ZTE's memorandum of law in support of its "Motion to Confirm Plea Agreement and Probation Conditions." Tr. of Revocation Hrg. 219:12–25; *see also* Order, ECF No. 191 at 12–13 (referring to "Doc. No. 145" as ZTE's "motion" to "Confirm [the] Plea Agreement and Probation Conditions," and reproducing the Government's quotation thereof). Despite these public disclosures, the docket entry for Document 145, the document itself, and other related filings are entirely sealed.

Respectfully submitted,

Dated: June 27, 2022

Thomas J. Williams
State Bar No. 21578500
HAYNES AND BOONE, LLP
301 Commerce Street, Suite 2600
Fort Worth, Texas 76102
P: 817.347.6600
F: 817.347.6650
thomas.williams@haynesboone.com

Laura Lee Prather
State Bar No. 16234200
Michael J. Lambert
State Bar No. 24128020
HAYNES AND BOONE, LLP
600 Congress Ave., Suite 1300
P: 512.867.8400
F. 512.867.8470
laura.prather@haynesboone.com
michael.lambert@haynesboone.com

Katie Townsend*
Jennifer A. Nelson*
THE REPORTERS COMMITTEE FOR FREEDOM OF
THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
P: 202.795.9300
F: 202.795.9310
ktownsend@rcfp.org
jnelson@rcfp.org

*Application forthcoming for admission *pro hac vice*

*Counsel for Media Intervenors*

25

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was hand-filed on June 27, 2022. Notice of this filing and service will be sent by U.S. mail and by e-mail to all parties.

Dated: June 27, 2022

Thomas J. Williams
*Counsel for Media Intervenors*

26