**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| ZTE CORPORATION, | § | NO. 3:17-CR-0120-K |
| | § | |
| *Defendant.* | § | |

**ZTE Corporation's Opposition to Motion of Proposed Intervenors Dow Jones & Co., Inc. and Reuters News Media Inc. to Intervene and Unseal Judicial Records**

TABLE OF CONTENTS

Table of Authorities ...................................................................................................................ii

Introduction ...............................................................................................................................1

Background .................................................................................................................................2

    I.   Confidentiality Protocols Govern ZTEC's Monitorship. ...............................................2

    II.  Proposed Intervenors Report on This Case. ..................................................................5

Legal Standards ..........................................................................................................................6

Argument ....................................................................................................................................8

    I.   The Motion to Intervene Is Untimely and Should Be Denied. ......................................8

        A.   Proposed Intervenors Waited Far Too Long to Seek to Intervene. ............................8

        B.   ZTEC Would Suffer Prejudice from Intervention That Outweighs Any
            Prejudice to Proposed Intervenors. ........................................................................13

            1.   ZTEC Filed Materials Under Seal Based on a Reasonable Expectation of
                Confidentiality. ..............................................................................................13

            2.   Intervention at This Late Stage Would Raise Serious Constitutional
                Concerns. ........................................................................................................15

        C.   The Unusual Circumstances Presented by a Monitorship Militate Against
            Intervention. ............................................................................................................16

    II.  Alternatively, the Court Should Deny the Motion to Unseal or, at the Very Least,
        Allow Submissions on Whether Each Sealed Document Contains Protected Material. ...17

        A.   Proposed Intervenors Have No Absolute Right to Access Sensitive
            Monitorship Materials. ............................................................................................18

            1.   There's No Presumption of Access to Monitorship Materials. ...........................18

            2.   ZTEC's Interest in the Confidentiality of Its Information and the Public's
                 Interests in the Success of Future Monitorships Override Any Presumed
                 Right of Access. .............................................................................................20

        B.   Any Unsealing Requires a Document-by-Document Analysis. ..................................22

Conclusion ................................................................................................................................23

## TABLE OF AUTHORITIES

### CASES

*100Reporters LLC v. DOJ*,
  248 F. Supp. 3d 115 (D.D.C. 2017)........................................................................................19

*100Reporters LLC v. DOJ*,
  316 F. Supp. 3d 124 (D.D.C. 2018)............................................................................. 1, 17, 19

*Apple Inc. v. Samsung Elecs. Co.*,
  727 F.3d 1214 (Fed. Cir. 2013)............................................................................................21

*Binh Hoa Le v. Exeter Fin. Corp.*,
  990 F.3d 410 (5th Cir. 2021)....................................................................................2, 21, 22

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
  142 S. Ct. 1002 (2022) ......................................................................................................7, 12

*Chavez v. Standard Ins. Co.*,
  No. 3:18-CV-2013-N, 2020 WL 6382611 (N.D. Tex. Oct. 30, 2020)................................... 8, 20, 21

*In re Complaint of Malmac SDN BHD*,
  16 F.3d 1216 (5th Cir. 1994)................................................................................................12

*Corley v. Jackson Police Dep't*,
  755 F.2d 1207 (5th Cir. 1985) ..............................................................................................14

*In re CPWH Residential Ltd.*,
  122 F. App'x 708 (5th Cir. 2004) .........................................................................................12

*Davis v. E. Baton Rouge Par. Sch. Bd.*,
  78 F.3d 920 (5th Cir. 1996)..................................................................................................11

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,
  No. MDL 3:11-MD-2244-K, 2013 WL 2091715 (N.D. Tex. May 15, 2013)....................................20

*Dickey's Barbecue Pit, Inc. v. Neighbors*,
  No. 4:14-CV-484, 2015 WL 13466613 (E.D. Tex. June 5, 2015) ......................................................20

*Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*,
  346 F.3d 552 (5th Cir. 2003)............................................................................................. 12, 16

*Engra, Inc. v. Gabel*,
  958 F.2d 643 (5th Cir. 1992)................................................................................................12

*FirstBank Sw. v. Heartland Fin. USA, Inc.*,
  No. 2:21-CV-024-Z-BQ, 2021 WL 4047398 (N.D. Tex. Sept. 2, 2021)................................. 8, 20, 21

*Frew v. Hawkins,*
 401 F. Supp. 2d 619 (E.D. Tex. 2005) ................................................................................14

*In re Hearst Newspapers, L.L.C.,*
 641 F.3d 168 (5th Cir. 2011)..............................................................................................11

*Joe McDaniel Const. Co., Inc. v. Cisneros,*
 998 F.2d 1014 (5th Cir. 1993) ............................................................................................12

*June Med. Servs., LLC v. Phillips,*
 22 F.4th 512 (5th Cir. 2022) ..........................................................................................2, 22

*Kneeland v. Nat'l Collegiate Athletic Ass'n,*
 806 F.2d 1285 (5th Cir. 1987) ...........................................................................................12

*Lucas v. McKeithen,*
 102 F.3d 171 (5th Cir. 1996)...............................................................................................12

*NAACP v. New York,*
 413 U.S. 345 (1973)............................................................................................................12

*Rotstain v. Mendez,*
 986 F.3d 931 (5th Cir. 2021)...........................................................................6, 7, 8, 11, 16

*Seals v. Herzing Inc.-New Orleans,*
 482 F. App'x 893 (5th Cir. 2012) ..................................................................................8, 20

*SEC v. Am. Int'l Grp.,*
 712 F.3d 1 (D.C. Cir. 2013) ...............................................................................................19

*Staley v. Harris Cnty. Tex.,*
 160 F. App'x 410 (5th Cir. 2005) ...................................................................................7, 12

*Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp.,*
 332 F.3d 815 (5th Cir. 2003)..............................................................................................12

*United States By Bell On Behalf of Marshall v. Allegheny-Ludlum Indus., Inc.,*
 553 F.2d 451 (5th Cir. 1977).......................................................................................... 12, 14

*United States v. Aldawsari,*
 683 F.3d 660 (5th Cir. 2012)..........................................................................................7, 11

*United States v. Blackwell,*
 694 F.2d 1325 (D.C. Cir. 1982)..........................................................................................16

*United States v. Blagojevich,*
 612 F.3d 558 (7th Cir. 2010)................................................................................................6

iii

*United States v. Covington Cnty. Sch. Dist.*,
    499 F.3d 464 (5th Cir. 2007)............................................................................................12

*United States v. Goldfaden*,
    959 F.2d 1324 (5th Cir. 1992) .........................................................................................15

*United States v. HSBC Bank USA, N.A.*,
    863 F.3d 125 (2d Cir. 2017) ..................................................................................... 18, 19

*United States v. Morrison*,
    521 F. Supp. 2d 246 (E.D.N.Y. 2007)...............................................................................6

*United States v. Olesen*,
    920 F.2d 538 (8th Cir. 1990)............................................................................................16

*United States v. Ritsema*,
    89 F.3d 392 (7th Cir. 1996)..............................................................................................16

*United States v. Skidmore*,
    998 F.2d 372 (6th Cir. 1993).............................................................................................15

*United States v. State of Miss.*,
    958 F.2d 112 (5th Cir. 1992)............................................................................................12

*United States v. U.S. Steel Corp.*,
    548 F.2d 1232 (5th Cir. 1977) ..........................................................................1, 11, 13, 14

*United States v. Yesil*,
    991 F.2d 1527 (11th Cir. 1992) ........................................................................................16

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
    913 F.3d 443 (5th Cir. 2019).............................................................................................22

*Wilson v. Sw. Airlines, Inc.*,
    880 F.2d 807 (5th Cir. 1989)...........................................................................................12

## RULES

Fed. R. Civ. P. 24 .................................................................................................................7

Fed. R. Crim. P. 57 ...............................................................................................................6

## OTHER AUTHORITIES

Veronica Root,
    *The Monitor-"Client" Relationship*,
    100 VA. L. REV. 523 (2014)...............................................................................................17

**INTRODUCTION**

The confidentiality of monitorship materials is crucial to the full and frank communication necessary to achieve corporate monitorships' important goals. To that end, five years ago, this Court ordered the monitorship materials in this case sealed, just as the parties had agreed. That was no secret to the movants—Dow Jones & Co., Inc. (owner and publisher of the Wall Street Journal, the "Journal") and Reuters News & Media Inc. ("Reuters," and together, "Proposed Intervenors")—which have extensively reported on this case from the very beginning. Yet now, five years after the fact, and months after the monitorship has ended, Proposed Intervenors have initiated a belated effort to upset the longstanding status quo and expectations of the parties and unseal the monitorship materials in their entirety.

It is far too late for that. Allowing non-parties who were fully aware of a proceeding to sit on the sidelines for years and step in only after that proceeding is closed would contravene any notion of sound case management or administration. *See United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1236 (5th Cir. 1977) (intervention untimely where movants were "aware of the" potential need to intervene "from the first yet slept on [their] rights"). And here, it would severely prejudice the parties, including by publicizing highly sensitive information that was intended to remain confidential. Unsealing in this context would also seriously undermine the use of corporate monitorships as a law-enforcement tool, as public disclosure of monitorship materials could "[c]hill[ ] frank, robust discussion" and "companies' provision of . . . information." *See 100Reporters LLC v. DOJ*, 316 F. Supp. 3d 124, 156–57 (D.D.C. 2018) ("*100Reporters II*").

Alternatively, if the Court is inclined to allow intervention and entertain the request to unseal, the Court should reject Proposed Intervenors' sweeping request to unseal the monitorship materials in their entirety. To the contrary, as Proposed Intervenors' own authority teaches, precedent requires the Court to "scrupulously examine," "document-by-document" and "line-by-line," what can be

1

unsealed. *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (first quotation); *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021) (second and third quotations) (internal quotation marks omitted). If necessary, ZTE Corporation ("ZTEC") respectfully requests the opportunity to assist the Court in that undertaking by providing supplemental submissions addressing the need for continued sealing on a document-by-document basis.

But there is no need to go down that road. The intervention motion should be denied as untimely, and the monitorship materials should remain under seal consistent with the structure established by this Court in a transparent, public manner over five years ago.

## BACKGROUND

### I. Confidentiality Protocols Govern ZTEC's Monitorship.

In March 2017, ZTEC pleaded guilty, under a Plea Agreement with the U.S. Department of Justice, to three counts: conspiracy to unlawfully export, obstruction of justice, and false statements to federal investigators. *See* Dkt. 3. As relevant here, ZTEC agreed to:

- undergo a three-year term of corporate probation;

- "implement and maintain throughout the term of probation a compliance and ethics program designed to prevent and detect violations of [U.S. Export Control Laws]"; and

- "retain an independent, third-party compliance monitor . . . to review and assess in a professionally independent and objective fashion ZTEC's processes, policies, and procedures related to compliance with U.S. Export Control Laws, as well as ZTEC's compliance with the terms of this Plea Agreement."

*Id.* at 3, 5, 8–9; *see also id.*, Attach. A (describing the duties of the Monitor).

With respect to the last requirement, ZTEC and DOJ explicitly agreed in the Plea Agreement that the materials produced and the reports generated during the monitorship would "likely include proprietary, financial, confidential, and competitive business information," the public disclosure of which "could discourage cooperation and thus undermine the objectives of this Plea Agreement[ ]."

Dkt. 3 at 9. Accordingly, the parties agreed to a presumption that the materials would remain non-public. *Id.* at 9–10.

That agreement was entered on the Court's public docket on March 7, 2017, and has remained publicly available ever since. *See* Dkt. 3; Br. Proposed Intervenors Dow Jones & Co., Inc. & Reuters News & Media Inc. Supp. Mot. Intervene & Unseal Judicial Rs. (Dkt. 201) ("Br.") 2–4. The same day, DOJ issued a public press release with links available on its public website to the relevant public documents, including the Plea Agreement and its Attachment A, all of which were and remain accessible to the public. *See* Ex. C.

Later that month, the Court held arraignment and sentencing hearings—open to the public and reported on by Proposed Intervenors—where the parties accepted the Court's modifications to Attachment A of the Plea Agreement, which modifications set the terms for appointing the Independent Corporate Compliance Monitor and defined the scope of the monitorship. Dkt. 14; Dkt. 17; Dkt. 18. As relevant, Attachment A (Modified) provides:

- "[t]he Monitor's primary responsibility is to assess and monitor the Company's compliance with the terms of th[e Plea A]greement so as to specifically address and reduce the risk of any recurrence of the Company's misconduct including evaluating the Company's corporate compliance program with respect to [U.S. Export Control Laws]";

- "[t]he Monitor will review and evaluate the effectiveness of the Company's internal controls, record-keeping, and existing or new procedures as they relate to the Company's compliance with [U.S. Export Control Laws]";

- "the Company shall provide the Monitor with access to all information, documents, records, facilities and/or employees that fall within the scope of responsibilities of the Monitor under the [Plea] Agreement" (subject to certain limitations not relevant here); and

- "the Monitor shall issue an initial written report . . . setting forth the Monitor's assessment and, if appropriate and necessary, making recommendations reasonably designed to improve the Company's Export Control Policies and Procedures," as well as two follow-up reports assessing "whether the Company's Export Control Policies and Procedures are reasonably designed to detect and prevent violations of [U.S. Export Control Laws]."

Dkt. 14 at 1–2, 4–5. Attachment A (Modified) **strengthened** the monitorship's confidentiality protocol by providing that "**[a]ll** reports, submissions, or other materials encompassed by this [Plea A]greement **will be filed under seal** and **all** Court proceedings will be **conducted in camera**." *Id.* at 7 (emphases added). Attachment A (Modified) thus placed the public on notice—in March 2017—about the confidentiality provisions the Court deemed necessary and warranted.

Eighteen months later, the Court entered an Order Modifying Conditions of Probation on the public docket sheet. *See* Dkt. 69. As relevant here, the order extended the monitorship an additional two years (five years in total, through March 22, 2022), *id.* at 3–5, but didn't modify the confidentiality protocol set forth in Attachment A (Modified) to the Plea Agreement.[1] ZTEC's agreement to provide the Monitor virtually unfettered access to materials related to its export controls compliance hinged on the condition that—as before— all materials related to the monitorship would remain confidential and be filed under seal. Dkt. 14 at 7; Dkt. 69 (not modifying confidentiality provisions of original terms).

Throughout the monitorship, ZTEC, DOJ, and the Monitor proceeded according to the Court's publicly known and widely reported order sealing all monitorship materials and filings, operating under the expectation that these materials would remain confidential. This practice proved essential for the open and effective conduct of the monitorship, and at no time during the monitorship was the sealing of the docket or the confidentiality of the materials ever challenged.

---

[1] Proposed Intervenors misread the Court's March 22, 2022 order as referencing an additional $300 million fine imposed by the Court in October 2018, a fact they claim didn't "c[o]me to light" until the order. Br. 7; *see also* Dkt. 191 at 4. But the fine was actually imposed and suspended by the Bureau of Industry and Security ("BIS") in 2017, and ultimately forfeited as part of a superseding agreement that ZTEC reached with BIS in 2018. This was explained by the Court during the March 14, 2022 public revocation hearing—on which Proposed Intervenors reported—and is evident in the BIS agreement itself, which has been publicly available since 2018. *See* Dkt. 178 at 16; *see also* Ex. A23 (June 1, 2018 Reuters report correctly describing the disposition of the $300 million).

Only at the end of June 2022—over five years after the monitorship began and 14 weeks after it ended—did Proposed Intervenors for the first time seek leave to intervene for purposes of unsealing the monitorship materials.  *See* Dkts. 200–01.

## II.    Proposed Intervenors Report on This Case.

Proposed Intervenors took no steps to alert the Court to any concerns about its sealing orders, but that was not because they were unaware of these orders.  To the contrary, Proposed Intervenors have been reporting on this case—including the lengthy government investigation that preceded it—for over a decade, publishing nearly 100 reports between them.  *See* Exs. A1–A52 (52 Reuters reports between March 22, 2012 & March 23, 2022); Exs. B1–B41 (41 Journal reports between July 17, 2012 & March 24, 2022).[2]

Among (many) other things, Proposed Intervenors published numerous reports five years ago on the Plea Agreement and other public filings that set out the confidentiality protections for the monitorship materials.  *See, e.g.*, Exs. A8–A10 (three March 7 & 8, 2017 Reuters reports); Ex. B18 (March 7, 2017 Journal report); *see also* Br. 11.  Proposed Intervenors also reported on the public hearing where the parties agreed to the Court's Attachment A (Modified), a filing which was itself public.  *See, e.g.*, Ex. A12 (March 22, 2017 Reuters report).  And Proposed Intervenors reported on the Court's public entry of the Order Modifying Conditions of Probation and the underlying events.  *See, e.g.*, Exs. A38–A39 (two October 3–5, 2018 Reuters reports); Exs. B29–B30 (two October 4 & 5, 2018 Journal reports).  In total, Proposed Intervenors have published at least 93 reports about this matter since 2012.

---

[2]  "Reports" refers to Proposed Intervenors' various publications through a variety of media, including articles, alerts, finance updates, and podcasts.  Numerous additional articles in which Proposed Intervenors reported on the importance of ZTEC to the global telecommunications market more generally have been excluded and thus, if anything, Exhibits A and B undercount Proposed Intervenors' focus on ZTEC over the relevant period.

Moreover, Proposed Intervenors have long been aware of—and reported on—the sealed nature of the proceedings while maintaining a watchful eye on the docket and the Court's proceedings and orders. *See* Ex. A15 (December 21, 2017 Reuters article referencing its "review of court documents," noting the Monitor's appointment order "was sealed, leaving additional details about the judge's decision unclear," and saying its sources "wished to remain unnamed because the matter is not public"); Exs. B37–B38 (two October 2021 & March 2022 Journal articles reporting Monitor's statement that "matter was under seal" and Court's note that "ZTE had complained privately to [it] about the monitor's conduct"); *see also* Exs. A12, A15, A26–A27, A33, A36, A38, A46–A48, A51–A52 (12 Reuters reports between March 2017 & March 2022 specifically referring to Court orders, Court appointments, or Court hearings); Exs. B18, B29, B36–B41 (eight Journal reports between March 2017 & March 2022 referring to same).

## LEGAL STANDARDS

***Motion to Intervene.*** "A would-be intervenor bears the burden to prove an entitlement to intervene." *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021). Although the Federal Rules of Criminal Procedure don't explicitly address intervention, courts have applied well-established intervention principles in resolving requests to intervene in criminal matters. *See United States v. Blagojevich*, 612 F.3d 558, 560–61 (7th Cir. 2010) (deciding whether media timely intervened in a criminal proceeding because "[p]eople potentially affected by the decision can't sit on the sidelines, as if intervention were a petition for rehearing"); *see also* Fed. R. Crim. P. 57(b) ("When [t]here [i]s [n]o controlling [l]aw," a "judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."); *United States v. Morrison*, 521 F. Supp. 2d 246, 251–52 (E.D.N.Y. 2007) ("Where the Rules of Criminal Procedure do not speak specifically to a matter, a court conducting a criminal case is permitted to draw from and mirror a practice that is sanctioned by the Federal Rules of Civil Procedure.") (internal quotation marks omitted).

6

As the Supreme Court has explained, where there is no standard for intervention set out in the governing rules, courts "consider[ ] the policies underlying intervention," including those embodied in Federal Rule of Civil Procedure 24. *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1010 (2022) (internal quotation marks omitted) (using Rule 24 to evaluate motion to intervene on appeal). Proposed Intervenors' own authority (at 12) demonstrates the propriety of applying the civil rules in circumstances such as these. *See United States v. Aldawsari*, 683 F.3d 660, 663–64 (5th Cir. 2012) (applying the civil rule governing timing of a notice of appeal in a reporter's challenge to a gag order because the criminal rule didn't contemplate appeals by third parties).[3]

Rule 24 requires that any intervention—whether as a matter of right or by permission—be "timely." Fed. R. Civ. P. 24(a)–(b). As the Supreme Court has emphasized, "[t]imeliness is an important consideration in deciding whether intervention should be allowed." *Cameron*, 142 S. Ct. at 1012 (holding intervention timely where a state attorney general sought to intervene two days after learning that the state's interests would no longer be protected). The Fifth Circuit, in turn, has cautioned that "intervention attempts after final judgments are ordinarily looked upon with a jaundiced eye [as they] have a strong tendency to prejudice existing parties to the litigation or to interfere substantially with the orderly process of the court." *Staley v. Harris Cnty. Tex.*, 160 F. App'x 410, 412 (5th Cir. 2005).

In analyzing timeliness, courts consider (1) "the length of time the movant waited to file," (2) "the prejudice to the existing parties from any delay," (3) "the prejudice to the movant if intervention is denied, and" (4) "any unusual circumstances." *Rotstain*, 986 F.3d at 937 (reviewing for

---

[3] Proposed Intervenors' other authorities aren't to the contrary—they primarily hold that the public (and through it the media) has an interest that confers standing to challenge sealing decisions when the challenge is lodged in a timely manner, which tracks Rule 24 as well. *See* Fed. R. Civ. P. 24(a) (allowing timely intervention of those with "an interest relating to the property or transaction" that "may as a practical matter [be] impair[ed] or impede[d]" by disposition of the matter).

7

abuse of discretion the denial of intervention on timeliness grounds).  And "[s]ince timeliness is a requirement for . . . intervention," a failure to satisfy this requirement negates the "need [to] address the other factors for intervention."  *Id.* at 942.

**Motion to Unseal.**  While "the public has a common law right to inspect and copy judicial records," this right "is not absolute."  *Chavez v. Standard Ins. Co.*, No. 3:18-CV-2013-N, 2020 WL 6382611, at *1 (N.D. Tex. Oct. 30, 2020) (internal quotation marks omitted); *accord Seals v. Herzing Inc.-New Orleans*, 482 F. App'x 893, 896 (5th Cir. 2012).  Parties "sometimes have good reasons to file documents (or portions of them) under seal, such as protecting trade secrets."  *FirstBank Sw. v. Heartland Fin. USA, Inc.*, No. 2:21-CV-024-Z-BQ, 2021 WL 4047398, at *1 (N.D. Tex. Sept. 2, 2021).  "In considering whether to seal judicial records," courts apply "a strict balancing test"—on a "case-by-case, document-by-document basis"—that weighs "the public's common law right of access against the interests favoring nondisclosure."  *Id.* (internal quotation marks omitted).  The decision whether to seal judicial records is thus "left to the sound discretion of the trial court."  *Chavez*, 2020 WL 6382611, at *1 (internal quotation marks omitted); *accord Seals*, 482 F. App'x at 896 (reviewing sealing decision for abuse of discretion).

**ARGUMENT**

**I.    The Motion to Intervene Is Untimely and Should Be Denied.**

Proposed Intervenors' motion devotes just a single paragraph to intervention, and proceeds as if their right to intervene is foreordained.  *See* Br. 12.  Hardly.  Movants' bid to intervene comes five years too late, raises serious constitutional concerns, and undermines the effectiveness of monitorships as a law-enforcement tool.  It should be denied.

**A.    Proposed Intervenors Waited Far Too Long to Seek to Intervene.**

Timeliness is measured from when a "would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene."  *Rotstain*, 986 F.3d

at 937.  Here, Proposed Intervenors have known of their interest in this case—and the sealed nature of the materials they seek—for years.

The Plea Agreement was publicly entered on the Court's docket on March 7, 2017.  *See* Dkts. 1, 3.  As Proposed Intervenors acknowledge (at 4), the Plea Agreement made clear that all of the monitorship materials—including the Monitor's reports and ZTEC's disclosures—would remain "non-public" because they would "likely include proprietary, financial, confidential, and competitive business information" and because disclosure "could discourage cooperation and thus undermine the objectives of the Plea Agreement's reporting requirement."  Dkt. 3 at 9.

Both Proposed Intervenors reported on the Plea Agreement when it was entered on the docket in 2017.  *See* Exs. A8–A10 (three March 7 & 8, 2017 Reuters reports); Ex. B18 (March 7, 2017 Journal report).  And Reuters additionally reported on the public hearing to accept the plea, at which the Court strengthened the confidentiality protocol in Attachment A to the Plea Agreement by requiring all monitorship materials to "be filed under seal" and all related proceedings "conducted *in camera.*"  Dkt. 14 at 7; *see also* Dkts. 6, 8, 11; Ex. A12 (March 22, 2017 Reuters report).[4]

Yet at no time during the five-year monitorship that followed—despite Proposed Intervenors' own extensive coverage and their awareness of the sealed nature of the monitorship filings—did Proposed Intervenors seek to intervene or otherwise gain access to the sealed materials at issue.  That has been the pattern from the very beginning of the monitorship, when Proposed Intervenors recognized that as a consequence of the 2017 sealing orders, "additional details" regarding the

---

[4]  What is more, by the time of the guilty plea, Proposed Intervenors had already been covering the government investigation and the conduct that gave rise to it for nearly five years—and Reuters even claimed that its own 2012 reporting prompted the government's investigation.  *See* Exs. A1–A7 (seven Reuters reports between March 22, 2012 & March 2, 2017); Exs. B1–B17 (17 Journal reports between July 17, 2012 & August 18, 2016).

monitorship were "unclear." Ex. A15 (December 21, 2017 Reuters report).  But Proposed Intervenors didn't suggest the Court was obliged to clarify anything.

Nothing changed thereafter.  When the Court extended ZTEC's term of probation in 2018, both Proposed Intervenors extensively reported on that development, too.[5]  As Proposed Intervenors acknowledge (at 6), that publicly filed order explicitly referred to the "**Second** Supplemental Report" of the Monitor, the Monitor's "**Year 2** Work Plan," and the Monitor's "**Recommendation** to Modify Conditions of Probation"—none of which was publicly available.  Dkt. 69 at 1 (emphases added).  Still, Proposed Intervenors neither raised concerns about the sealing of these materials nor sought access to them in 2018.

The same held true in October 2021, when the Journal reported through its own investigative efforts that ZTEC and the Monitor had disagreed about the scope and length of the monitorship.  Ex. B37 (October 15, 2021 Journal article) (reporting that the Monitor was "seeking to extend his own term," the Monitor requested "more than 150 sets of documents" and "dozens" of depositions, and "ZTE ha[d] argued that there is no legal basis for extending [the] monitorship").  The Journal sought comment on its investigation from the Monitor, who declined because "the matter **was under seal**." *Id.* (emphasis added).  Again, neither Proposed Intervenors nor anyone else in the media sought access to the sealed materials in 2021.

Nor did they do so in March 2022, when the Court noticed a public revocation hearing and ZTEC filed several redacted bench briefs on the public docket.  *See* Dkts. 158, 164, 170–71; Exs. A46, A49 (two March 7–14, 2022 Reuters reports on upcoming proceedings); Br. 9–10 (acknowledging redacted briefs).  At the hearing, the Court informed attendees—including representatives of

---

[5]    *See* Dkt. 69 (order entered on public docket on October 3, 2018); Exs. A38–A39 (two October 3–5, 2018 Reuters reports on decision or conduct underlying extension); Exs. B29–B30 (two October 4 & 5, 2018 Journal reports on decision or conduct underlying extension).

Proposed Intervenors—that there were still materials "under seal" so the parties had to "approach the bench." Dkt. 178 at 14; *see also id.* at 236 (ZTEC Counsel: "Your Honor, just as to sealed materials, we filed our bench brief under seal."). Despite attending and reporting on the hearing, neither Proposed Intervenors nor any other member of the media moved to intervene or to obtain access to any sealed materials at that time. *See* Exs. A47–A48 (two March 14, 2022 Reuters reports describing hearing).

The same held true for the Court's final (and public) order ending the monitorship on March 22, 2022. In that order, the Court acknowledged that "this case has largely been sealed" and referenced sealed material. Dkt. 191 at 7; *see, e.g., id.* at 5 (referencing sealed February 24, 2022 "hearing to resolve outstanding motions"); *id.* at 12–13 (quoting and describing sealed Dkt. 145). Again, Proposed Intervenors extensively reported on the development. Exs. A50–A52 (three March 22–23, 2022 Reuters reports); Exs. B38–B41 (four March 23 & 24, 2022 Journal reports). Yet they still took no immediate action—and their delay stands in stark contrast to the prompt action of the media intervenors in their own cited cases. *See* Br. 12 (citing *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 173–74 (5th Cir. 2011) (reporters "discovered a closed court room" proceeding and immediately "filed a handwritten motion" requesting access to the proceeding, along with a second motion two days later for access to any future hearings); *Aldawsari*, 683 F.3d at 664 (reporter moved to intervene a few weeks after entry of gag order); *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 923–25 (5th Cir. 1996) (media moved to intervene within a week of entry of a gag order and sought emergency stays of a later gag order while appeal pended).

By any reasonable standard, a delay of five years in seeking to intervene demonstrates a dispositive lack of diligence. *Rotstain*, 986 F.3d at 938 ("[T]he district court did not abuse its discretion in determining that a delay of 18 months weighed against timeliness."); *U.S. Steel Corp.*, 548 F.2d at 1235 & n.6 (intervention untimely a year after entry of challenged consent order that had been

11

published in federal register and that movant had testified about before entry).  The Fifth Circuit has repeatedly held that much shorter delays—ranging from seven to eighteen months—militate against finding timeliness.[6]

Proposed Intervenors not only "slept on their rights" for over five years, they also **continued** to delay even after ZTEC's probation ended on March 22, 2022—and this Court would be well within its discretion to find their motion untimely on that basis alone.  That's because would-be intervenors are expected to move swiftly—especially in well-publicized cases.  For example, in *Cameron*, 142 S. Ct. at 1013, the Supreme Court approvingly described its prior decision in *NAACP v. New York*, 413 U.S. 345 (1973), which found intervention untimely where movants waited a month to act despite being on notice that their interests weren't protected.

Other cases are to the same effect.  *See*, *e.g.*, *Staley*, 160 F. App'x at 412–13 (intervention untimely a year after case was initiated and nine days after final judgment issued because "the publicity surrounding [the] lawsuit could not have escaped [movant's] attention"); *Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 561 (5th Cir. 2003) (intervention untimely where two months passed after movant knew of its interest); *United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 466 (5th Cir. 2007) (same for 15 weeks); *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) (motion to intervene untimely when filed four months after lawsuit was removed from state court and eight days before the end of discovery).

---

[6]  *In re CPWH Residential Ltd.*, 122 F. App'x 708, 711 (5th Cir. 2004) (one year); *Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. 2003) (similar); *Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996) (similar); *In re Complaint of Malmac SDN BHD*, 16 F.3d 1216 (5th Cir. 1994) (seven months); *United States v. State of Miss.*, 958 F.2d 112, 116 (5th Cir. 1992) (similar); *Engra, Inc. v. Gabel*, 958 F.2d 643, 645 (5th Cir. 1992) (similar); *Wilson v. Sw. Airlines, Inc.*, 880 F.2d 807, 817 n.1 (5th Cir. 1989) (18 months); *United States By Bell On Behalf of Marshall v. Allegheny-Ludlum Indus., Inc.*, 553 F.2d 451, 453 (5th Cir. 1977) (six to seven months); *Joe McDaniel Const. Co., Inc. v. Cisneros*, 998 F.2d 1014 (5th Cir. 1993) (18 months).

There's no reason why Proposed Intervenors—who were on ample notice of these proceedings and their sealed nature for over five years while they reported on them extensively—couldn't have moved to intervene long ago. Proposed Intervenors "slept on [their] rights," *U.S. Steel Corp.*, 548 F.2d at 1236, and shouldn't be permitted to upset the carefully considered, negotiated, and executed Plea Agreement and monitorship at this late date.

### B.    ZTEC Would Suffer Prejudice from Intervention That Outweighs Any Prejudice to Proposed Intervenors.

Proposed Intervenors' outsized delay is hardly harmless. Their late-breaking attempt to insert themselves into these proceedings lands over five years after ZTEC gave up a panoply of constitutional rights and pleaded guilty in exchange for a specific structure and process of the monitorship. Intervention at this late stage would result in prejudice to ZTEC that outweighs any prejudice to Proposed Intervenors.

#### 1.    ZTEC Filed Materials Under Seal Based on a Reasonable Expectation of Confidentiality.

ZTEC, the Monitor, and DOJ operated for years under the reasonable and unchallenged belief that the monitorship materials would remain sealed. The parties structured and conformed their actions accordingly. Among other things, the Monitor filed numerous reports, and ZTEC and DOJ filed numerous associated materials, with the Court—comprising, together with the Court's own entries, 191 docket entries through the Court's March 22, 2022 final order ending the monitorship, only about 40 of which appear on the public docket. A sea change in the sealing regime ***now***—only after the monitorship has concluded—would grossly upend those well-settled expectations. Greater prejudice in the context of a monitorship—which is founded on the notion of transparency in exchange for confidentiality—is hard to imagine.

This type of prejudice is precisely why the Fifth Circuit has consistently held that "[t]he prejudice factor militates heavily against" allowing intervention to challenge the terms of a consent

decree—a judicially approved settlement agreement—after its implementation. *Corley v. Jackson Police Dep't*, 755 F.2d 1207, 1210 (5th Cir. 1985).[7]  In *Corley*, for example, the Fifth Circuit described the "prejudice [a]s apparent" where the would-be intervenors waited over four years after the entry of a "widely publicized" consent decree to intervene, because it "put at risk" a "negotiated settlement of a difficult problem . . . to the disadvantage of the named parties, the class, the police department and the City." *Id.* at 1209–10.  Any prejudice to the would-be intervenors was thus heavily outweighed by the fact that "they had control of the tactical decisions which occasioned or contributed to the inordinate delay." *Id.* at 1210.

The same is true here.  Proposed Intervenors had ample notice and opportunity to intervene over the last five years. *See supra* at 5–6, 8–13.  There is no justifiable excuse for their delay.  But even if there was, "prejudice to the parties would still exist because, as [Proposed Intervenors] concede[ ]," *see* Br. 4, they were "aware of the [sealing decision] from the first yet slept on [their] rights and took no action to assert [their] interest." *U.S. Steel Corp.*, 548 F.2d at 1236; *accord Allegheny-Ludlum Indus.*, 553 F.2d at 453 ("Intervention now for the purpose of challenging the consent agreement will prejudice the appellees by jeopardizing months of negotiations, causing substantial litigation expenses, and even more substantial expenses of implementation.").

This principle more than answers an argument by Proposed Intervenors that a request to unseal during the monitorship might have faced opposition.  The question isn't whether the Court would have granted an unsealing request at any point during the monitorship.  It's whether Proposed Intervenors were entitled to **remain silent for years about their objections to sealing**, or at the very least about their intent to insert themselves into this case, while the parties, the Monitor, and the

---

[7]  *See Frew v. Hawkins*, 401 F. Supp. 2d 619, 627 (E.D. Tex. 2005) ("A consent decree is not court-imposed; rather, it is a voluntary agreement between the parties involved in litigation that is then evaluated for fairness, and potentially accepted by the Court and entered as a judgment.").

Court carried out their important work. The answer to that question is clearly no. Proposed Intervenors can't be permitted to lie behind the log for years and only now claim an entitlement at this late date.

### 2. Intervention at This Late Stage Would Raise Serious Constitutional Concerns.

Intervention at this late stage would also raise substantial constitutional issues. As Proposed Intervenors acknowledge (at 4), a condition of ZTEC's plea and agreement to the monitorship was that the parties would maintain as confidential ZTEC's certifications, the Monitor's reports, and any "disclosures of information related to violations." Dkt. 3 at 9. The Court accepted that plea only after ***strengthening*** the protections afforded to the confidentiality of the monitorship materials. *See* Dkt. 14 at 3–4, 7. Because the Court's sealing order was embedded within Attachment A (Modified) to the Plea Agreement, it formed a part of ZTEC's deal pursuant to which it gave up its constitutional right to, among other things, a trial.[8]

Allowing intervention now for the purpose of unsealing these precise materials would retroactively modify the Plea Agreement, in violation of ZTEC's constitutional right to due process. *See United States v. Goldfaden*, 959 F.2d 1324, 1328 (5th Cir. 1992) ("Defendants . . . give up constitutional rights in reliance on promises made by prosecutors, implicating the Due Process Clause once the court accepts their pleas."). ZTEC surrendered important constitutional rights—including

---

[8] These enhanced protections were a condition of ZTEC's plea. ZTEC had the right to reject the Court's modification, and the Court couldn't unilaterally modify the plea. *See* Dkt. 3 at 5 ("Pursuant to Rule 11(c)(5), F.R.C.P., if the Court rejects this Plea Agreement, the Court shall afford ZTEC the opportunity to withdraw its plea . . . ."); *United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993) ("[T]he district court is not authorized to go beyond the confines of Rule 11 in accepting or rejecting plea agreements. Nothing in the rules even remotely allows the district court to accept a guilty plea but rewrite the plea agreement, even if the modified agreement is more favorable to the defendant.") (internal quotation marks and citation omitted).

the rights to plead not guilty and to a jury trial—in exchange for the benefits set forth in the Plea Agreement. *See* Dkt. 3 at 1 (listing the rights ZTEC waived).

Retroactively changing the terms of the Plea Agreement would thus violate ZTEC's constitutional rights. An out-of-time intervention should also be denied to avoid the serious constitutional concerns raised by post-sentencing and post-monitorship publication of these materials. *See United States v. Yesil*, 991 F.2d 1527, 1532 (11th Cir. 1992) ("If a plea agreement is accepted by the district court and a defendant subsequently is denied the benefit of the agreement for which he bargained, the defendant is constitutionally entitled to relief.").[9]

### C. The Unusual Circumstances Presented by a Monitorship Militate Against Intervention.

The last traditional consideration in the civil-intervention context—whether "unusual circumstances militat[e] either for or against a determination" of untimeliness—further confirms that intervention would be untimely here. *Rotstain*, 986 F.3d at 937 (internal quotation marks omitted); *see also Effjohn*, 346 F.3d at 562 (would-be intervenor's "full knowledge of the litigation and lack[ of] good cause for delay" was an "unusual circumstance[ ] weigh[ing] against" intervention).

The ultimate success of any given monitorship—and monitorships generally—depends heavily on frank, comprehensive disclosures and communication between the monitor and the company. Maintaining the confidentiality of monitorship materials is paramount to achieving this

---

[9]  *See also United States v. Ritsema*, 89 F.3d 392, 398–99 (7th Cir. 1996) (Under Rule 11, the district court's role with respect to plea agreements "is limited to the approval or rejection of an agreement once finalized . . . . Once the court has accepted a plea agreement, however, it is, as a general rule, bound by the terms of that agreement."); *United States v. Olesen*, 920 F.2d 538, 540 (8th Cir. 1990) ("Once a court has accepted an agreement, however, there is no provision in the rules that allows it to reject or modify the agreement."); *United States v. Blackwell*, 694 F.2d 1325, 1339 (D.C. Cir. 1982) ("The judge's faithful observance of the requirements of Rule 11 is just as vital to the fairness and efficiency of the process as the prosecutor's compliance. She has a primary duty under that rule to insure not only that the terms of the [plea agreement] are understood by the defendant but that they are adhered to by both sides, as well as by the court itself.").

goal.  In contrast, allowing materials to be unsealed after the fact would grievously undermine that trust to the detriment of the public interest in future monitorships in appropriate cases.  *See 100Reporters II*, 316 F. Supp. 3d at 156–57 (FOIA case noting that public disclosure of monitorship materials could result in "[c]hilling of frank, robust discussion" and "chill companies' provision of that information").

As one senior DOJ official has testified to Congress, monitor "reports are designated as confidential" to "ensure[ ] that law enforcement investigations are protected and that the corporation feels free to provide the monitor access to its operations without fear that the process could be exploited by the corporation's competitors to acquire confidential or proprietary business information."  Ex. D at 10 (DOJ Congressional Testimony).  Unsealing the materials here would chill companies' willingness to enter into monitorships in the first place—thereby diminishing the utility of an important tool for "reduc[ing] recidivism of corporate crime" and protecting "the integrity of the marketplace."  Ex. E at 2 (Morford Memo).[10]

## II.     Alternatively, the Court Should Deny the Motion to Unseal or, at the Very Least, Allow Submissions on Whether Each Sealed Document Contains Protected Material.

Even if the Court grants the motion to intervene, it should still deny Proposed Intervenors' motion to unseal because there's no presumption of access to monitorship materials.  Even if there were, ZTEC's interest in preserving the confidentiality of trade secrets, business information, personal identifying information, and ongoing investigations—and broader interests in maintaining the

---

[10]   *See also* Veronica Root, *The Monitor-"Client" Relationship*, 100 VA. L. REV. 523, 555, 565, 575–76 (2014) (arguing that protecting monitorship materials from disclosure will best effectuate "full and frank discussion" and "a desire to act ethically on the part of the corporation and its internal agents," and that "[t]he public's interest in having full access to [monitorship materials] must be balanced against the possibility that there is a class of companies—some of which have the ability to effect substantial changes on the U.S. economy—who will balk at the imposition of a corporate compliance monitor without assurances of confidentiality").

confidentiality and integrity of this monitorship in particular and monitorships more generally—override that presumption.

In all events, if the Court is inclined to unseal some monitorship materials, the Court would need to undertake a document-by-document, page-by-page, line-by-line analysis to determine which materials may be released in unredacted form, which may be released with redactions, and which must remain under seal entirely. ZTEC requests the opportunity to participate in that process through supplemental submissions as the Court may require.

### A. Proposed Intervenors Have No Absolute Right to Access Sensitive Monitorship Materials.

Proposed Intervenors maintain that they're entitled, under federal common law and the First Amendment, to access the materials this Court sealed long ago. *See* Br. 14–15, 23. But there's no presumption of public access to monitorship materials—and for good reason. Monitorship materials are replete with confidential information—including protected trade secrets, confidential business information, personal identifying information, and information related to ongoing law-enforcement efforts. Unsealing materials after a monitorship ends erodes the openness and transparency among companies, monitors, and the government on which this law-enforcement tool depends.

### 1. There's No Presumption of Access to Monitorship Materials.

To start, the Court should deny Proposed Intervenors' motion because Proposed Intervenors don't have a presumption of access to monitorship materials—including those filed with the Court. No appellate court has ever held that the common-law or constitutional right of access applies to **monitorship** materials.

In *United States v. HSBC Bank USA, N.A.*, the Second Circuit held that the district court erred in partially unsealing a monitor's report regarding a company's compliance with a deferred prosecution agreement because the monitor's report wasn't a judicial record. 863 F.3d 125, 134–42 (2d Cir. 2017) ("*HSBC*"). Accordingly, there was no right of access to the report—whether under the common law

18

or the First Amendment. *See id.* at 142. So too in *SEC v. American International Group*, 712 F.3d 1 (D.C. Cir. 2013) ("*AIG*"). There, the D.C. Circuit held that a reporter had "no common law or First Amendment right of access" to the monitor's reports. *Id.* at 5; *see also 100Reporters LLC v. DOJ*, 248 F. Supp. 3d 115, 143 (D.D.C. 2017) ("*100Reporters I*") (monitor reports "confidential" for purposes of a FOIA request because disclosure would compromise "essential business interests" and "likely cause competitive harm" by making public details of a company's "finance structure, business partners, and customers").

Proposed Intervenors attempt to distinguish *HSBC* and *AIG*. *See* Br. 16–17. But the role of monitorship materials in law-enforcement efforts—and the significant interests in the confidentiality of these materials—are the same here as in those cases. *See HSBC*, 863 F.3d at 132 (acknowledging government's concerns about the report's confidentiality and that public disclosure could "undermine the effectiveness of [a] Monitor" to the detriment of the government's law-enforcement efforts); *AIG*, 712 F.3d at 3 (noting the sensitive information in the reports); *100Reporters I*, 248 F. Supp. 3d at 143–44 (exempting from disclosure as "confidential" monitor work plans detailing the company's "operations, structure, and compliance controls" because releasing the information would "likely . . . cause competitive harm").

Indeed, the Plea Agreement specifically recognized that "public disclosure of [the monitorship] materials could discourage cooperation," "undermin[ing] the objectives of this Plea Agreement's reporting requirements." Dkt. 3 at 9. For those reasons, as in *HSBC* and *AIG*, the parties were assured at the outset of the monitorship that "[a]ll reports, submissions, or other materials encompassed by [the] agreement w[ould] be filed under seal." Dkt. 14 at 7; *see 100Reporters II*, 316 F. Supp. 3d at 157 ("Companies provide full access to monitors on the condition that the information they share will remain confidential . . . . If they believe that potentially sensitive information will not remain confidential, they are unlikely to provide it . . . [and] agency decision makers will be forced to

19

rely on lower-quality information."); *supra* at 2–4. As in *HSBC* and *AIG*, this Court should decline to hold that Proposed Intervenors have a right to access the monitorship materials.

> **2.      ZTEC's Interest in the Confidentiality of Its Information and the Public's Interests in the Success of Future Monitorships Override Any Presumed Right of Access.**

Even if the Court concludes that **all** of the monitorship materials are subject to a presumption of access, it should still deny Proposed Intervenors' motion to unseal the entire record because ZTEC's interests in the preservation of trade secrets, confidential business information, personal identifying information, and information related to ongoing investigations (not to mention the underlying public and law-enforcement interest in ensuring the effectiveness of monitorships generally) outweigh any interest of Proposed Intervenors.

While "the public has a common law right to inspect and copy judicial records," this right "is not absolute." *Chavez*, 2020 WL 6382611, at *1 (internal quotation marks omitted); *accord Seals*, 482 F. App'x at 896. Parties may "have good reasons to file documents (or portions of them) under seal"— including to "protect[ ] trade secrets," *FirstBank*, 2021 WL 4047398, at *1 (internal quotation marks omitted), and other confidential business information, *see, e.g.*, *Dickey's Barbecue Pit, Inc. v. Neighbors*, No. 4:14-CV-484, 2015 WL 13466613, at *4–5 (E.D. Tex. June 5, 2015) (maintaining under seal "exhibits containing confidential financial and operational information"); *see also In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. MDL 3:11-MD-2244-K, 2013 WL 2091715, at *3 (N.D. Tex. May 15, 2013) (noting that discoverable monitor report was covered by a protective order "provid[ing] for an agreed protocol for handling sensitive documents, discovery, and depositions" and that "any trade secrets in the Monitor Reports ha[d] been redacted" to "closely guard[ ] any confidential business information provided by [the company]").

Accordingly, "the common-law right of inspection has bowed before the power of a court to [e]nsure that its records do not serve as sources of business information that might harm a litigant's

competitive standing." *Chavez*, 2020 WL 6382611, at *1 (quoting *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013)).  Indeed, avoiding the public release of a trade secret can constitute a "compelling reason[ ]." *Apple*, 727 F.3d at 1221 (internal quotation marks omitted); *accord FirstBank*, 2021 WL 4047398, at *2 ("One factor that weighs in favor of sealing documents is when the release of the documents will cause competitive harm to a business, e.g., where the document reveals trade secrets.") (quoting *Apple*, 727 F.3d at 1221).

Those interests are more than enough to require sealing here.  Just as the Plea Agreement contemplated, the monitorship materials are unquestionably replete with "proprietary, financial, confidential, and competitive business information."  Dkt. 3 at 9.

Moreover, the nature of the sealed materials would make it extremely difficult—if not impossible—for the Court to determine "less drastic alternatives to sealing."  Br. 18 (internal quotation marks omitted).  The Fifth Circuit requires "judges [to] undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Binh Hoa Le*, 990 F.3d at 419.  Yet sensitive information is inextricably interwoven throughout a record of this size.

Proposed Intervenors insist that "the public has an overwhelming interest in access to the Sealed Records" because of the "political and economic ramifications of this case," the figures involved in the "historic" penalties on ZTEC, and the appointment of the particular Monitor.  Br. 20–21.  Even setting aside why, if all that is true, Proposed Intervenors slept on their rights and didn't seek access to these materials for five years, "it does not necessarily follow that the public has a legally cognizable interest in every document filed." *Apple*, 727 F.3d at 1226.  And Proposed Intervenors' position entirely ignores the compelling interest—of the public, the government, and companies—in ensuring the success of future monitorships, and the chilling effect that a last-ditch unsealing would have on that interest.

21

As to monitorships generally, there is no question that the public "benefit[s] from [the] reduced recidivism" and "protection of the integrity of the marketplace" that monitorships foment. Ex. E at 2 (Morford Memo).  Nor is there any question that full and frank communication—in confidence—is needed for monitorships to thrive.  In this case, it has long been agreed and accepted that "public disclosure of [monitorship] materials could discourage cooperation and thus undermine the objectives of this Plea Agreement's reporting requirements."  Dkt. 3 at 9; *see also* Dkt. 14 at 7. Unsealing would generate precisely those evils by leading future companies to balk at entering into monitorships.  The motion to unseal should be denied for that reason, too.

**B.      Any Unsealing Requires a Document-by-Document Analysis.**

If the Court is inclined to unseal some of the monitorship materials, Proposed Intervenors' blanket demand that the Court unseal "***all*** docket entries, judicial documents, and/or transcripts electronically docketed or filed under seal in this case," Br. 1 (emphasis added), is a non-starter.

"[U]nsealing a document cannot be undone, for secrecy is a one-way street and once information is published, it cannot be made secret again." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 449 (5th Cir. 2019) (cleaned up).  For that reason, as Proposed Intervenors' authority demonstrates, the Fifth Circuit has long required a thorough and careful process to determine whether a document, on an individual basis, should be sealed.  *See, e.g., June Med.*, 22 F.4th at 521 (remanding for district court to "undertake a document-by-document, line-by-line" analysis) (internal quotation marks omitted).

Consequently, if the Court grants the motion to unseal in any part, the Court would need to "scrupulously examine," *June Med.*, 22 F.4th at 521, "document-by-document," and "line-by-line," what can be unsealed and in what form, *Binh Hoa Le*, 990 F.3d at 419 (internal quotation marks omitted); *see also id.* ("judges, not litigants must undertake" this analysis); Br. 24 (asking the Court to

22

"issue on-the-record findings" if it decides that certain records must "remain sealed, either whole or in part").

If the Court is inclined to undertake this endeavor, ZTEC respectfully requests the opportunity to propose an orderly process for submissions to the Court regarding the categorization of the docket, confidentiality concerns with each document, and potential redactions of each document implicated by Proposed Intervenors' motion. Those submissions will both aid the Court in determining the confidentiality of each document and protect the interests discussed above. But again, there is no need to expend the Court's and the parties' time and efforts on that undertaking, because the instant motion is untimely and should be denied for that reason alone.

## CONCLUSION

For these reasons, ZTEC respectfully requests that the Court deny Proposed Intervenors' motion to intervene and unseal. Alternatively, ZTEC respectfully requests that it be afforded the opportunity to propose an orderly process for further submissions to the Court regarding the sealing status of the monitorship materials on a document-by-document basis.

DATED:  July 25, 2022                              Respectfully submitted.

Michael P. Gibson (SBN 07871500)                   /s/ Allyson N. Ho
Paul T. Lund (SBN 24070185)                        Robert C. Walters (SBN 20820300)
BURLESON, PATE & GIBSON LLP                         Allyson N. Ho (SBN 24033667)
Founders Square                                    Betty X. Yang (SBN 24088690)
900 Jackson Street, Suite 330                      Elizabeth A. Kiernan (SBN 24105666)
Dallas, TX 75202                                   GIBSON, DUNN & CRUTCHER LLP
(214) 871-4900                                     2001 Ross Avenue, Suite 2100
mgibson@bp-g.com                                   Dallas, TX 75201
plund@bp-g.com                                     (214) 698-3100
                                                   rwalters@gibsondunn.com
J. Evans Rice III (admitted pro hac vice)          aho@gibsondunn.com
Stephen F. Propst (admitted pro hac vice)          byang@gibsondunn.com
HOGAN LOVELLS US LLP                                ekiernan@gibsondunn.com
555 13th Street, N.W.
Washington, DC 20004                               F. Joseph Warin (admitted pro hac vice)
(202) 637-5600                                     John W.F. Chesley (admitted pro hac vice)
evans.rice@hoganlovells.com                        Jeffrey S. Rosenberg (admitted pro hac vice)
stephen.propst@hoganlovells.com                    GIBSON, DUNN & CRUTCHER LLP
                                                   1050 Connecticut Avenue, N.W.
M. Scott Barnard (SBN 24001690)                    Washington, D.C. 20036
Brennan H. Meier (SBN 24077507)                    (202) 955-8500
AKIN GUMP STRAUSS HAUER & FELD LLP                  jwarin@gibsondunn.com
2300 N. Field St., Suite 1800                      jchesley@gibsondunn.com
Dallas, TX 75021                                   jsrosenberg@gibsondunn.com
(214) 969-2800
sbarnard@akingump.com
bhmeier@akingump.com


ATTORNEYS FOR ZTE CORPORATION


24

## CERTIFICATE OF SERVICE

This is to certify that on July 25, 2022, a true and correct copy of the foregoing ZTE Corporation's Opposition to Motion of Proposed Intervenors Dow Jones & Co., Inc. and Reuters News Media Inc. to Intervene and Unseal Judicial Records and exhibits thereto, was electronically filed with the Court using CM/ECF, which will send notification of this filing to counsel of record in the above-captioned case.

*/s/ Allyson N. Ho*
Allyson N. Ho
